**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

| | |
|---|---|
| JOSEPH DAVIS, JANE FRASER, JACKIE MAGNANT, ROSE MURPHY, and DEREK MURRAY,<br><br>    Plaintiffs,<br><br>v.<br><br>HENRY VASSA CATE, VILLAGE CREEK ASSOCIATES, LLC, MISSOE, LLC, CREEK HOLDINGS III, LLC, PALMETTO BUILDING GROUP, and VILLAGE CREEK LANDING, LLC<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.    CV223-051

---

**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, CIVIL PENALTIES AND
ATTORNEYS' FEES AND EXPENSES OF LITIGATION**

---

COME NOW Plaintiffs, Jane Fraser, Jackie Magnant, Rose Murphy, Derek Murray, and Joseph Davis (collectively "Plaintiffs") by and through undersigned counsel, and submit this Complaint for Damages, Injunctive Relief, Civil Penalties and Attorneys' Fees and Expenses of Litigation.  Defendants Henry Vassa Cate; Village Creek Landing, LLC; Village Creek Associates, LLC; Missoe, LLC; Creek Holdings III, LLC; and Palmetto Building Group (collectively, "Defendants") have engaged in land-clearing, grading, filling, and construction activities (the "Work") at The Park at Village Creek Subdivision ("Park at Village Creek") and on contiguous lands along S. Harrington Road known as Village Creek Landing ("Village Creek Landing").  The Work resulted in the destruction and fill of jurisdictional waters of the United States without a Clean Water Act § 404 permit or a Clean Water Act § 401 water quality certification in continuing

violation of the Clean Water Act.  Defendants have also failed to properly install and maintain erosion controls on disturbed areas as required under their Clean Water Act § 402 permit and conducted construction activities on areas without a Clean Water Act § 402 permit, resulting in the discharge of polluting sediment-laden stormwater into wetlands and other waters in and near the Park at Village Creek in violation of the Clean Water Act.  Plaintiffs make the following allegations:

## NATURE OF THE ACTION

1.     This is a citizen civil suit to enforce the statutory requirements of the Federal Water Pollution Control Act (the "Clean Water Act" or "CWA") against Defendants pursuant to 33 U.S.C. § 1365(a).

2.     Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Id.* at § 1251(a). To accomplish that objective, Congress set as a national goal that "the discharge of pollutants into the navigable waters be eliminated. . . ." *Id.* Accordingly, Section 301(a) of the CWA provides that the discharge of pollutants into navigable waters of the United States is unlawful, unless the discharger complies with the Act's requirements. *Id.* at § 1311(a).

3.     Defendants Henry Vassa Cate, Village Creek Associates, LLC, Palmetto Building Group, LLC, and Missoe, LLC (collectively, the "Owner Defendants") are or were the owners or developers of the construction project known as The Park at Village Creek ("Park at Village Creek"), an approximately 6.7-acre residential subdivision on St. Simons Island, Glynn County, Georgia.

4.     Defendant Creek Holdings III, LLC is the owner and developer of land contiguous to and located north of the Park at Village Creek.

5.     Defendant Village Creek Landing, LLC is the owner and developer of Village Creek Landing.

6.     Defendants cleared, graded, and filled wetlands and other waters subject to the jurisdiction of the U.S. Army Corps of Engineers ("Corps") (referred to hereinafter as "jurisdictional wetlands") within the Park at Village Creek, property owned by Creek Holdings III, LLC, and Village Creek Landing without CWA permits to do so.

7.     Upon information and belief, Defendants utilized mechanized equipment to remove woody vegetation from marshlands regulated under Georgia's Coastal Marshlands Protection Act, OCGA § 12–5–280 et seq. ("CMPA").  The Georgia Supreme Court declared that "the waters of the United States and Georgia include coastal marshlands as defined in the CMPA which form the border of or are in reasonable proximity to those waters." *Ctr. For A Sustainable Coast v. Coastal Marshlands Prot. Comm.*, 670 S.E.2d 429, 434–35 (Ga. 2008).  Thus, marshlands subject to the CMPA are also jurisdictional waters of the United States.

8.     Based on knowledge and belief, the area of presumed impacted jurisdictional wetlands within the Park at Village Creek, Village Creek Landing, and property owned by Creek Holdings III, LLC, including the portion of jurisdictional wetlands also subject to the CMPA, is at least 1.82 acres as depicted on Figure 1, referred to hereinafter as the "Village Creek Wetlands." A true and accurate copy of Figure 1 is attached hereto as Exhibit A.



**Figure 1. Village Creek Wetlands**

9.      Defendants also failed to obtain a CWA § 401 water quality certification prior to performing Work in the Village Creek Wetlands.

10.      Upon information and belief, the Owner Defendants have failed and continue to fail to implement and maintain the Best Management Practices ("BMPs") in the Park at Village Creek. BMPs necessary to prevent or minimize erosion and sedimentation runoff are required under the CWA § 402 permit issued by the Georgia Department of Natural Resources ("Georgia DNR") pursuant to the Notice of Intent (Permittee NOI Number GAR38BA28-V1) submitted by Palmetto Building Group on July 14, 2020.  *See* Exhibit B.

11.     Upon information and belief, Creek Holdings III, LLC and Village Creek Landing, LLC did not obtain permits required by CWA §§ 402 and 404 prior to performing Work in the Village Creek Wetlands.

12.     Defendants have failed to comply with federal and state laws and regulations in violation of CWA § 301(a), 33 U.S.C § 1311(a); CWA § 401, 33 U.S.C. § 1341; CWA § 402, 33 U.S.C. § 1342; and CWA § 404, 33 U.S.C. § 1344.

## PARTIES, JURISDICTION, AND VENUE

### *Plaintiffs*

13.     Plaintiff Joseph Davis, in his own capacity and in his representative capacity on behalf of his deceased mother, Geraldean Davis, the owner of real property located at 352 S. Harrington Road, St. Simons, Glynn County, GA 31522, has and continues to be affected by the Defendants' activities.  Mr. Davis has been appointed as the Executor of his mother's estate by the Glynn County, Georgia Probate Court. Mr. Davis grew up in the local area and recalls hunting, hiking, viewing wildlife and enjoying the aesthetic beauty of the wetlands and marshlands, including the Village Creek Wetlands, near his family home.  Mr. Davis has a sincere interest in the preservation of the aesthetic and recreational benefits of the Village Creek Wetlands.

14.     Plaintiff Jane Fraser is the owner of real property located at 165 North Harrington Road, St. Simons Island, Glynn County, GA 31522.  Ms. Fraser resides at 227 W. Sixteenth Street, Sea Island, Glynn County, GA 31561.  Ms. Fraser has and continues to be affected and damaged by the Defendants' ongoing CWA violations. For many years, Ms. Fraser has been an advocate for the preservation of the natural environment of St. Simons Island.  She values the water resources and the availability of clean, fishable, and swimmable bodies of water on St. Simons Island, including the Village Creek Wetlands.  Prior to their destruction, Ms. Fraser regularly viewed and appreciated the aesthetic values of the Village Creek Wetlands from S. Harrington

Road and from the public boat launch located at the western end of S. Harrington Road known locally as Village Creek Landing. Ms. Fraser has a sincere interest in preserving the aesthetic and recreational benefits of the Village Creek Wetlands.

15.     Plaintiff Jackie Magnant, whose principal residence is 337 S. Harrington Road, St. Simons Island, Glynn County, GA 31522, is the owner and/ or occupier of real property that has and continues to be affected the Defendants' ongoing CWA violations. Ms. Magnant has an interest in the preservation of the aesthetic and recreational benefits of the wetlands near her property. She enjoys spending time outdoors and viewing local wildlife. Ms. Magnant has regularly viewed and appreciated the aesthetic values of the Village Creek Wetlands from S. Harrington Road and from Village Creek Landing and has a sincere interest in preserving the aesthetic and recreational benefits of the Village Creek Wetlands.

16.     Plaintiff Rose Murphy, whose principal residence is 238 S. Harrington Road, St. Simons Island, Glynn County, GA 31522, is the owner and/ or occupier of real property that has and continues to be affected by the Defendants' activities. Ms. Murphy is a lifelong resident of S. Harrington Road and recalls enjoying for many years the aesthetic beauty of the marshlands near her home, including, prior to their destruction, the Village Creek Wetlands. She has a sincere interest in the preservation of the aesthetic and recreational benefits of the Village Creek Wetlands.

17.     Plaintiff Derek Murray, whose principal residence is 334 S. Harrington Road, St. Simons Island, Glynn County, GA 31522, is the owner and/ or occupier of real property that has and continues to be affected by the Defendants' activities. Mr. Murray is a lifelong resident of S. Harrington Road. Prior to their destruction, he regularly viewed and appreciated the aesthetic values of the Village Creek Wetlands. He also has a sincere interest in the preservation of the aesthetic and recreational benefits of the Village Creek Wetlands.

18.     All Plaintiffs have an interest in protecting and maintaining the health of coastal Georgia and its wetlands including the Village Creek Wetlands.  These interests are adversely affected by the Defendants' continuing violations of the CWA §§ 401, 402, and 404.

19.     Defendants have violated the CWA by illegally filling the Village Creek Wetlands without a CWA § 404 permit and a CWA § 401 water quality certification and by failing to maintain BMPs to control sediment and other pollutants from the Park at Village Creek in accordance with their CWA § 402 permit or without a CWA § 402 permit. Sediments and other pollutants discharged due to the Work at The Park at Village Creek and Village Creek Landing have been deposited in the Village Creek Wetlands and, upon information and belief, into adjacent jurisdictional waters.  Due to the Defendants' CWA violations, Plaintiffs suffer, and will continue to suffer, from harmful environmental repercussions.  These injuries are actual and concrete, and the relief sought in this action would redress them.

### *Defendants*

20.     Defendant Henry Vassa Cate ("Cate") is a resident and citizen of Georgia with a principal address at 2502 Frederica Road, St. Simons Island, GA, 31522.  Cate transacts business in Glynn County, Georgia and is the owner and/or developer of the Park at Village Creek which is located in Glynn County, Georgia.

21.     In accordance with Georgia Code Ann. § 9-10-93, Cate is deemed to reside in Glynn County and is subject to the venue of this Court. Cate may be served with process through personal service at 2502 Frederica Road, St. Simons Island, GA 31522.

22.     Defendant Village Creek Associates, LLC ("Village Creek Associates") is a Wyoming limited liability company with a principal address at P.O. Box 20452, St. Simons Island, GA, 31522.  Village Creek Associates transacts business in Glynn County, Georgia and is the

owner and/or developer of certain tracts or parcels of land situated in Village Creek which is located in Glynn County, Georgia.

23.     In accordance with Georgia Code Ann. § 14-2-510, Village Creek Associates is deemed to do business in Glynn County and is subject to the venue of this Court. Village Creek Associates may be served with process through its registered agent, Mr. Jason Tate, who can be found at 2487 Demere Road, Suite 400, St. Simons Island, GA, 31522.

24.     Defendant Creek Holdings III, LLC ("Creek Holdings III") is a Georgia limited liability company with a principal address at 313 Planation Chase, St. Simons Island, GA, 31522. Creek Holdings III transacts business in Glynn County, Georgia and is the owner and/or developer of certain tracts or parcels of land situated in the Park at Village Creek which is located in Glynn County, Georgia.

25.     In accordance with Georgia Code Ann. § 14-2-510, Creek Holdings III is deemed to do business in Glynn County and is subject to the venue of this Court. Creek Holdings III may be served with process through its registered agent, Mr. Vassa Cate, who can be found at 313 Planation Chase, St. Simons Island, GA, 31522.

26.     Defendant Missoe, LLC ("Missoe") is a Georgia limited liability company with a principal address at 313 Planation Chase, St. Simons Island, GA, 31522.  Missoe transacts business in Glynn County, Georgia and is the owner and/or developer of certain tracts or parcels of land situated in the Park at Village Creek which is located in Glynn County, Georgia.

27.     In accordance with Georgia Code Ann. § 14-2-510, Missoe is deemed to do business in Glynn County and is subject to the venue of this Court. Missoe may be served with process through its registered agent, Mr. Vassa Cate, who can be found at 313 Planation Chase, St. Simons Island, GA, 31522.

28.     Defendant Palmetto Building Group, LLC ("Palmetto") is a Florida limited liability company with a principal address at P.O. Box 20542, St. Simons Island, GA 31522.  Palmetto transacts business in Glynn County, Georgia and has sought regulatory approvals for the Work from Glynn County, the Brunswick-Glynn County Joint Water & Sewer Commission, the Georgia Soil and Water Conservation Commission, and the Georgia Department of Natural Resources. Based on information and belief, Palmetto has also provided construction services on certain tracts or parcels of land situated in the Park at Village Creek which is located in Glynn County, Georgia. *See* Exhibits B, C, D, E, and F.

29.     In accordance with Georgia Code Ann. § 14-2-510, Palmetto is deemed to do business in Glynn County and is subject to the venue of this Court. Palmetto may be served with process through its registered agent, Mr. Jason Tate, who can be found at 2487 Demere Road, Suite 400, St. Simons Island, GA, 31522.

30.     Defendant Village Creek Landing, LLC ("Village Creek Landing") is a Georgia limited liability company with a principal address at 504 Beachview Drive, Suite 3D, St. Simons Island, GA 31522.  Village Creek Landing transacts business in Glynn County, Georgia and has provided construction services on certain tracts or parcels of land situated contiguous to the Park at Village Creek which is located in Glynn County, Georgia.

31.     In accordance with Georgia Code Ann. § 14-2-510, Village Creek Landing is deemed to do business in Glynn County and is subject to the venue of this Court. Village Creek Landing may be served with process through its registered agent, Mr. John P. McQuigg, who can be found at 504 Beachview Drive, Suite 3D, St. Simons Island, GA 31522.

### *Jurisdiction*

32.     This court has personal jurisdiction over Defendants.

33.     This is a civil citizen action brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq., more commonly called the Clean Water Act. *See* 33 U.S.C. §§ 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief under the Constitution and laws of the United States).

### *Venue*

34.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district, and under 33 U.S.C. § 1365(c) because the sources of the violations described in this Complaint are located within this judicial district.

### <u>NOTICE</u>

35.     Plaintiffs sent a letter to Defendants on December 22, 2022 ("Notice Letter").  In the Notice Letter, Plaintiffs notified Defendants of its violations under the Clean Water Act and of Plaintiffs' intent to file suit for such violations after sixty (60) days, as required by 40 C.F.R. § 135.2(a)(1). A true and accurate copy of the Notice Letter is attached hereto as <u>Exhibit G</u>.

36.     This Notice Letter was also sent to the Georgia DNR, the United States Environmental Protection Agency ("EPA"), and the Corps required by Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A).

37.     More than sixty (60) days have passed since the Notice Letter was sent to Defendants and the regulatory agencies.

38.     Despite receiving notices, Defendants have refused and failed to cease violations of the CWA alleged in the Notice Letter.

39.     The violations of the CWA identified in the Notice Letter are continuing at this time and are reasonably likely to continue in the future.

## LEGAL BACKGROUND

***Clean Water Act Permitting Structure: Section 404 of the Clean Water Act***

40.     Section 301(a) of the Clean Water Act provides, in pertinent part, that "except as in compliance with . . . § 1344 of this title, the discharge of any pollutant by any person shall be unlawful."  33 U.S.C. § 1311(a).

41.     The Clean Water Act defines the term "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

42.     The term "pollutant" is broadly defined to include dredged spoil, rock, sand, and agricultural waste discharged into water.  33 U.S.C. §1362(6).

43.     The term "point source" means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).

44.     Section 404 of the Clean Water Act authorizes the Corps to issue permits for the discharge of dredged or fill material into "navigable waterways."  33 U.S.C. § 1344. Likewise, 33 C.F.R. § 323.3(a) charges the Corps to issue Clean Water Act Section 404 permits "for the discharge of dredged or fill material into waters of the United States."

45.     "Navigable waters" includes wetlands that directly abut traditional navigable waters or have a significant nexus with traditional navigable waters.

46.     The basic premise of the Section 404 permit program is to prohibit discharge of dredged or fill materials into navigable waters if a practicable alternative exists that is less damaging to the aquatic environment and surrounding ecosystem. *See* EPA, Permit Program under CWA Section 404, https://www.epa.gov/cwa-404/section-404-permit-program.

47.     The Corps may issue general permits, as opposed to individual permits, to approve activities that have minimal individual and cumulative adverse environmental effects. These general permits can be issued for no more than five years.  33 U.S.C. § 1344.

48.     NWP 14 is a specific nationwide permit under the Corps' general permitting authority which allows for "[a]ctivities required for crossings of waters of the United States associated with the construction, expansion, modification, or improvement of linear transportation projects (e.g., roads, highways, railways, trails, driveways, airport runways, and taxiways) in waters of the United States."  The permit may authorize impacts in no greater than one-half acre of waters of the United States. *See* Nationwide Permit 14 - Linear Transportation Projects.[1]

49.     NWP 18 is a specific nationwide permit under the Corps' general permitting authority which allows for "[m]inor discharges of dredged or fill material into all waters of the United States," provided the activity meets, among other things, the following criterion: The discharge will not cause the loss of more than 1/10-acre of waters of the United States. Nationwide Permit 18 – Minor Discharges.[2]

50.     If a project does not "qualify for a nationwide permit, an individual permit is required." *See* Permit Program under CWA Section 404, https://www.epa.gov/cwa-404/section-404-permit-program.

51.     Under Section 401 of the Clean Water Act, a federal agency cannot issue a Section 404 permit for an activity that may result in a discharge of dredged or fill material to a water of the United States until the State where the discharge would originate has granted or waived Section 401 Water Quality Certification. *See* 33 U.S.C. § 1341.

---

[1] US Army Corps of Engineers, 2021 Nationwide Permits, Available at, https://usace.contentdm.oclc.org/utils/getfile/collection/p16021coll7/id/20099.

[2] *Id.*

*Clean Water Act Permitting Structure: Section 401 of the Clean Water Act*

52.     Section 401(a)(1) of the Clean Water Act requires that any application to the Corps for a Section 404 permit must include a "certification from the State in which the discharge originated or will originate…[and] that any…discharge will comply with [other sections of the Clean Water Act]." 33 U.S.C. § 1341(a)(1).

53.     This certification from the state is known as a Section 401 Water Quality Certification ("401 WQC").

54.     Denying certification prohibits the federal permit or license from being issued. 33 U.S.C. § 1341(a)(1).

55.     The State of Georgia is authorized under Section 401 to issue a 401 WQC for all Section 404 permits.

56.     Individual Section 404 permits require that a corresponding Section 401 WQC be issued by the State of Georgia.

57.     By letter dated December 15, 2020 to the Corps Savannah District, the Georgia Environmental Protection Division ("Georgia EPD") issued a 401 WQC for nationwide permits pursuant to Section 401 of the Clean Water Act. *See* 33 U.S.C. § 1341; *see* Exhibit H at p. 1-2. The authorization for both NWPs includes the following conditions:

A.     "To assure compliance with State water quality standards, the relevant Nationwide Permit applicant shall conduct all activities in a manner that will assure water quality adequate or necessary to protect and maintain designated uses." *Id*. at 1.

B.     "To prevent or avoid degradation of water quality downstream, the relevant Nationwide Permit applicant shall install in-water Best Management Practices (BMPs) to the extent practical and feasible, to minimize total suspended solids (TSS) and

sedimentation for any work conducted within a state water or within the delineated boundaries of wetlands." *Id*.

C.      "In order to prevent or avoid violations of state water quality standards, the relevant Nationwide Permit applicant must ensure that any fill placed in state waters must be clean fill that is free of solid waste, toxic, or hazardous contaminants." *Id*.

D.      In addition, the Georgia Department of Natural Resources' Coastal Resources Division must issue additional authorization for use of NWPs within Georgia's 11-county coastal zone, which includes Glynn County.  *See id.* at 3-4.

### Clean Water Act Permitting Structure: Section 402 of the Clean Water Act

58.      Section 402 of the Clean Water Act prohibits the discharge of any pollutant to waters of the United States from a point source unless the discharge is authorized by a National Pollutant Discharge Elimination System ("NPDES") permit. The State of Georgia has delegated authority from the EPA to issue NPDES permits for the State of Georgia. *See* O.C.G.A. §§ 12-5-29 and 12-5-30.

59.      The Georgia DNR issued its NPDES General Permit, No. GAR100003[3] authorizing stormwater discharges associated with construction activities to waters within the State of Georgia. This permit allows developers to discharge storm water under certain permitted conditions and after the proper installation and maintenance of BMPs.  This permit includes the following language related to BMPs.

> Best management practices, as set forth in this permit, are required for all construction activities, and must be implemented in accordance with the design specifications contained in the "Manual for Erosion and Sediment Control in Georgia" (Manual) published by the Georgia Soil and Water Conservation Commission as of January 1 of the year in which the land-disturbing activity was

---

[3] Available for download from the Georgia Environmental Protection Division at, https://epd.georgia.gov/forms-permits/watershed-protection-branch-forms-permits/storm-water-forms/npdes-construction-storm.

permitted to prevent or reduce the pollution of waters of Georgia. Permit No. GAR10003 p. 21 of 56.

Failure to properly design, install, or maintain best management practices shall constitute a violation of this permit for each day on which such failure occurs. *Id.*

[N]o construction activities shall be conducted within a 25-foot buffer along coastal marshlands, as measured horizontally from the coastal marshland-upland interface, as determined in accordance with Part 4 of Article 4 of Chapter 5 of Title 12, the Coastal Marshlands Protection Act of 1970, and the rules and regulations promulgated thereunder. *Id*. at p. 24-25 of 56.

### *Citizen Suits*

60.     CWA § 505(a)(1) provides that "any citizen may commence a civil action on his own behalf—against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator [of the Environmental Protection Agency] or a State with respect to such a standard or limitation." 33 U.S.C. § 1365(a).

61.     The CWA defines "citizen" as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g).

62.     CWA § 505 defines "effluent standard or limitation" to include "an unlawful act under subsection (a) of section 1311." 33 U.S.C. § 1365(f); *see also* 33 U.S.C. § 1311(a) (prohibiting unpermitted discharges).

63.     In addition, CWA § 505(f)(5) defines "effluent standard or limitation" to include "certification under section 1341 of this title." 33 U.S.C. §1365(f)(5).

64.     The CWA defines "person" to include individuals, corporations, and political subdivisions of the state. 33 U.S.C. § 1362(5).

65.     Under CWA § 309(d), "[a]ny person who violates [the Clean Water Act § 301] . . . shall be subject to a civil penalty," which 40 C.F.R. § 19.4 caps at $65,618 per day for each violation. 33 U.S.C. § 1319(d).

## GENERAL FACTUAL ALLEGATIONS

### *Site History*

66.     A survey conducted on or about 2016 by Shupe Surveying Company, P.C. for P&M

Cedar Products, Inc. established a CMPA jurisdictional line on the property that is now the Park

at Village Creek. *See* Exhibit I.

67.     Prior to the time that Defendants began Work, the Village Creek Wetlands

contained a dense canopy of tree cover as indicated in the aerial photo taken in 2018. *See* Exhibit

J.

### *Defendants Discharged Dredge and Fill Material Without CWA Permits into the Village Creek Wetlands*

68.     Shupe Surveying prepared a survey of the CMPA marsh boundary on the property

for Defendant Palmetto dated May 6, 2021. *See* Exhibit C. Georgia DNR concurred with this

survey and instructed Palmetto as follows:

> This letter does not relieve you of the responsibility for obtaining other state, local
> or federal permission or authorization relative to the site.  It is also incumbent on
> you to contact your local government authority or the Environmental Protection
> Division of the Department of Natural Resources regarding any impacts of land
> within 25 feet of the established marshlands jurisdiction boundary.

69.     The May 6, 2021 survey indicated that the area contained jurisdictional wetlands

as indicated in Exhibit I, *supra*, and in Figure 2 below, which is an excerpt from the May 2021

survey.



Figure 2. Excerpt from CMPA Jurisdiction Line Survey of: A Portion of Lots 16 & 16A, Harrington Subdivision, St. Simons Island, Glynn County, Georgia

70.     Plats on file with Glynn County, including the FINAL PLAT OF: THE PARK AT VILLAGE CREEK (FORMERLY A PORTION OF LOTS 16 & 16A, HARRINGTON SUBDIVISION) dated August 5, 2022, indicate a reduced area of wetlands limited to a narrow area along the marsh boundary as indicated in <u>Exhibit E</u> and in Figure 3 below, which is an excerpt from the final plat dated August 5, 2022.



Figure 3. Excerpt from Final Plat of:  The Park at Village Creek (Formerly a Portion of Lots 16 & 16A, Harrington Subdivision) St. Simons Island, Glynn County, Georgia

71.     Upon information and belief, records on file with the Corps and the Georgia DNR do not explain why the area of wetlands indicated on the May 6, 2021 survey are no longer indicated on the Final Plat dated August 5, 2022 or why there is an apparent loss of wetlands on the property between May 6, 2021 and August 5, 2022.

72.     On or about March 3, 2021, Defendant Palmetto applied to the Glynn County Community Development Department for a Subdivision Review for the Park at Village Creek. *See* Exhibit F.  This application described the subdivision as a 6.78-acre tract to be divided into 25 lots.

73.     Records obtained from the Corps indicate that Dan Bucey of Resource & Land Consultants submitted a Pre-construction Notification ("PCN") on behalf of Defendant Village Creek Associates for use of NWPs 18 and 14 on April 12, 2022 at the Park at Village Creek. *See* Exhibit K.

74.     The Delineation Review of Aquatic Resources and PCN proposed impacts to 0.09 acres of jurisdictional wetlands, an area representing only a small portion of the Village Creek Wetlands. *See id.* at 1.

75.     The Corps responded to Mr. Bucey via email on June 13, 2022, stating that the project was incomplete and requesting additional documentation related to proposed wetland impacts. Exhibit L at p. 4.  Mr. Bucey responded to the Corps and provided additional information to the Corps via emails on July 12, 2022 and August 23, 2022; however, the Corps did not verify the project. *Id.* at p. 2-3. On November 2, 2022 the Corps responded to Mr. Bucey via email stating "Swinging back around to my email below [referring to the request for additional information of August 23, 2022]." *Id.* at p. 1.

76.     Upon information and belief, the Owner Defendants impacted the wetlands referenced in Mr. Bucey's PCN Form of April 12, 2022 without the Corps' verification for the use of NWPs 18 and 14.[4]

77.     A memorandum from the Glynn County Community Development Department, Planning & Zoning Division to the Glynn County Board of Supervisors, dated July 28, 2022, recommended approval of the final plat for the Park at Village Creek. *See* Exhibit N.  At that time,

---

[4] Plaintiffs submitted an additional Freedom of Information Act (FOIA) request to the Corps seeking information on permits and impacts to wetlands within the Park at Village Creek and Village Creek Landing on March 29, 2023. *See* Exhibit M. The Corps denied the request.

the Glynn County's review indicated that wetlands had been filled "under a permit from ACOE." *Id*. at 4.

78.     Upon information and belief, on or about September 29, 2022, as the second landfall of Hurricane Ian was expected on Georgia's coast, the Defendants removed nearly all of the woody vegetation from Village Creek Wetlands along the Park at Village Creek and Village Creek Landing.

79.     An aerial photograph taken on November 23, 2022 indicates the extent of vegetation removed and the presence of fill material and mulch within the Village Creek Wetlands as shown in Figure 4 below.  In comparison, a prior aerial photograph indicates that this area was formerly covered by a dense tree canopy and vegetation, which is illustrated in Figure 5 below.



Figure 4. Aerial Photo of a Portion of the Park at Village Creek on November 23, 2022



Figure 5. Glynn County, Georgia GIS Department Aerial, 2018.

80.    Upon information and belief, Defendants' Work resulted in the clearing, grading, and filling of the Village Creek Wetlands, totaling at least 1.82 acres without a CWA § 404 permit.

81.    The Georgia EPD's CWA § 401 water quality certifications for NWPs are contingent upon a permittee's compliance with its NWP – its CWA § 404 permit.

82.    Because Defendants did not receive a CWA § 404 permit prior to conducting Work in the Village Creek Wetlands, Defendants have also violated CWA § 401.

***Defendants Failed to Properly Implement and Maintain Erosion and Sediment Control Practices as Required Under the Construction Stormwater Permit for the Park at Village Creek***

83.    The Owner Defendants are or were the owners and/or developers of the Park at Village Creek and are responsible for protecting the jurisdictional wetlands on it by avoiding

impacts and by installing and maintaining erosion and sediment control BMPs prior to land disturbing activities.

84.     NPDES General Permit No. GAR100003 requires the applicant to submit a site-specific Erosion, Sedimentation and Pollution Control Plan ("ESC Plan") that complies with the technical requirements of the Manual for Erosion and Sediment Control in Georgia. In accordance with Permit No. GAR100003, the ESC Plan "shall identify all potential sources of pollution which may reasonably be expected to affect the quality of stormwater discharges from the construction site. In addition, the Plan shall describe and the permittee shall ensure the implementation of practices which will be used to reduce the pollutants in stormwater discharges associated with construction activity at the site and to assure compliance with the terms and conditions of this permit. The applicable permittee must implement and maintain the provisions of the Plan required under this part as a condition of this permit."[5]

85.     The Georgia Soil and Water Conservation Commission received the ESC Plan for the Park at Village Creek on April 6, 2020.  *See* Exhibit O at Sheet 1.  The ESC Plan states that it was prepared for Palmetto Building Group by Roberts Civil Engineering.

86.     The Georgia Soil and Water Conservation Commission granted a contingent approval of the plan on May 6, 2020.  *See* Exhibit B.

87.     Subsequently on July 14, 2020, Palmetto Building Group, with Vassa Cate listed as the site contact, filed a notice of intent to for Coverage under the 2018 Re-Issuance of the NPDES General Permits to Discharge Storm Water Associated with Construction Activity. *Id.*

---

[5] GAR10003 Common Development Construction General Permit – May 2018, p. 26 of 56, available at https://epd.georgia.gov/forms-permits/watershed-protection-branch-forms-permits/storm-water-forms/npdes-construction-storm.

88.     Based on aerial photographs, visual observations, and belief, Defendants have failed and continue to fail to comply with the ESC Plan.[6] For example, aerial photographs taken on December 3, 2020 indicate that Defendants improperly maintained silt fences, allowing discharge of sediment from several points in the silt fence surrounding disturbed areas at the Park at Village Creek.  *See* Exhibit Q.  The ESC Plan requires a properly maintained silt fence around the entire area of disturbance. *See* Exhibit O at sheet 2.

89.     As another example, photographs of October 11, 2022 show Defendants removed vegetation and placed mulch in areas outside the area of disturbance approved in the ESC Plan. *See* Exhibit R.

90.     An aerial photograph of the Park at Village Creek taken on November 23, 2022 indicates failing silt fences that intrude in to the Village Creek Wetlands, lack of stabilization and construction entrances near homes under construction, and recently felled trees, tree stumps and woody debris in areas outside the area of disturbance approved in the ESC Plan. *See* Exhibit S. Each of these items represents a failure to comply with CWA § 402.

### *Defendants Conducted Work in the Park at Village Creek and Village Creek Landing in Areas Unauthorized by the NPDES Construction Stormwater Permit*

91.     In addition to the Defendants' failures to install and maintain BMPs within the limits of disturbance in the ESC Plan for the Park at Village Creek, upon information and belief, the Defendants have disturbed areas not included in the ESC Plan.

---

[6] Defendant Palmetto submitted a Notice of Termination to its coverage under NPDES General Permit No. GAR10003 on March 3, 2023, indicating that "Construction Activities Ceased and Final Stabilization Completed." Ex. P at pp. 1-2. Following this, Vassa Cate (for start date 03/23/2023) and Vassa Cate Maritime Homes (for start date 05/12/2023) submitted Notices of Intent ("NOI") for coverage under NPDES General Permit No. GAR10003 for certain lots in the Park at Village Creek (Lots 9, 10, 11, 12, 13, 17, 18, and 19 under Vassa Cate's NOI and Lots 20, 21, 22 24, and 25 under Vassa Cate Maritime Homes' NOI). Ex. P at pp. 3-6. The covered lots remain subject to the same requirement to properly install and maintain BMPs in accordance with ESC Plans.  *See Id*.

92.     An aerial photograph of the Park at Village Creek taken on November 23, 2022 indicates that a silt fence is present on a parcel owned by Defendant Creek Holdings III. This parcel is north of the limits of disturbance in the ESC Plan for the Park at Village Creek. *See* <u>Exhibit T</u>.

93.     Documents received from the Corps, Glynn County, and the Georgia EPD in response to Plaintiffs' FOIA requests did not include a jurisdictional wetland survey, a CMPA survey, or an ESC Plan for land disturbance to the parcel owned by Creek Holdings III. Responses also did not include PCN Forms or other applications for CWA permits.

94.     Upon information and belief, Defendants removed nearly all of the woody vegetation from the Village Creek Wetlands utilizing mechanized equipment without obtaining a CWA § 402 permit, developing an ESC Plan, or installing and maintaining BMPs to control the discharge of sediment and other pollutants.

## **<u>FIRST CAUSE OF ACTION</u>**

**Unauthorized Discharge of Dredge and Fill Material into Jurisdictional Wetlands Without a Permit in Violation of Clean Water Act 33 U.S.C. §§ 1311(a), 1344, 1365(a) and 1365(f)**

95.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

96.     Upon information and belief, the Park at Village Creek, Village Creek Landing and property owned by Creek Holdings III contained approximately 1.82 acres of jurisdictional wetlands prior to the time at which Defendants conducted the Work. Defendants did not obtain CWA § 404 permits from the Corps prior to conducting the Work that resulted in the grading, fill, and destruction of the entire 1.82 acres of the Village Creek Wetlands

97.     Defendants applied for but failed to obtain authorization from the Corps to fill a small portion of the Village Creek Wetlands for purposes of NWP 14 (linear transportation project) and NWP 18 (minor discharges) prior to constructing a road and lots in the Park at Village Creek.

98.     Because Defendants' fill of the Village Creek Wetlands was not in compliance with CWA § 404, the fill in the Village Creek Wetlands is an illegal discharge into the waters of the United States in continuing violation of Section 301(a) of the Clean Water Act. 33 U.S.C. § 1311(a).  Defendants continue to violate the Clean Water Act each day the unauthorized fill remains in the Village Creek Wetlands. *See Jones Creek Invr's, LLC v. Columbia Cty., Ga*., No. CV 111-174, 2013 WL 1338238, at *12 (S.D. Ga. Mar. 28, 2013) (holding "the continued presence of illegally discharged fill material in U.S. jurisdictional waters constitutes a continued violation"); *Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc*., No. 608CV064, 2009 WL 2390851, at *8 (S.D. Ga. Aug. 4, 2009) (finding that an alleged CWA § 404 violation continues so long as the fill remains because the violation is "continuing in nature").

99.     By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

100.     Plaintiffs are entitled to injunctive relief to remedy Defendants' violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Defendants' continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs, for which they have no plain, speedy, or adequate remedy at law.

## SECOND CAUSE OF ACTION

**Noncompliance with Section 401 of the Clean Water Act 33 U.S.C. §§ 1311(a), 1341, 1365(a) and 1365(f)**

101.     Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

102.   Because Defendants were not authorized to place fill material in the Village Creek Wetlands, Defendants did not comply with the 401 WQC issued by the Georgia EPD, in accordance with CWA § 401.

103.   As a result, Defendants' filling of the Village Creek Wetlands was not in compliance with CWA § 401 and the fill in the Village Creek Wetlands is an illegal discharge into the waters of the United States pursuant to Section 301(a) of the Clean Water Act. 33 U.S.C. § 1311(a).

104.   Defendants continue to violate the Clean Water Act each day the unauthorized fill remains in the Village Creek Wetlands.

105.   By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

106.   Plaintiffs are entitled to injunctive relief to remedy Defendants' violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Defendants' continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs, for which they have no plain, speedy, or adequate remedy at law.

### THIRD CAUSE OF ACTION

**Failure to Implement and Maintain BMPs for Erosion and Sediment Control as Required Under the Georgia Environmental Protection Division General NPDES Permit No. GAR10003 in Violation of Clean Water Act 33 U.S.C. §§ 1311(a), 1344, 1365(a) and 1365(f)**

107.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

108.     Discharges associated with construction activities, including clearing, grading, and excavation of at least one acre require an NPDES stormwater discharge permit. 33 U.S.C. §§ 1311(a) & 1342(p); 40 C.F.R. § 122.26(b)(15).

109.     The activities undertaken by Defendants at Village Creek included the clearing, grading, and excavating of more than one acre.

110.     Sediment laden stormwater runoff from the Park at Village Creek has been discharged and continues to be discharged to the Village Creek Wetlands and other waters of the United States.

111.     The failure of Defendants to maintain BMPs as required by Permit No. GAR10003 has caused discharges of sediment-laden stormwater to flow into and remain in the Village Creek Wetlands and other waters of the United States.

112.     Based on information and belief, Defendants have conducted Work outside of the area

113.     By committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

114.     Plaintiffs are entitled to injunctive relief to remedy Defendants' violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Defendants' continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs, for which they have no plain, speedy, or adequate remedy at law.

## FOURTH CAUSE OF ACTION

**Attorneys' Fees, Costs, and Expenses under CWA Clean Water Act 33 U.S.C. § 1365(d)**

115.    Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

116.    Throughout the course of events underlying this action, Defendants have acted in bad faith and has caused Plaintiffs the unnecessary trouble and expense of litigation. Therefore, Plaintiffs are entitled to recover as damages from Defendants of all expenses of litigation including attorney's fees and expert witness fees under CWA § 505, 33 U.S.C. § 1365.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.    An order declaring that Defendants illegally discharged and continue to illegally discharge into the Village Creek Wetlands in violation of Sections 301(a), 401, 402, and 404 of the Clean Water Act;

B.    An order declaring that Defendants have failed and continue to fail to properly implement and maintain BMPs in the areas of disturbance in the Park at Village Creek Village Creek Landing, and contiguous property owned by Creek Holdings III;

C.    An order compelling Defendants to restore the Village Creek Wetlands and downgradient waters of the United States;

D.    A civil penalty in the amount of $64,618 for each day of each violation of the Clean Water Act pursuant to 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

E.    An award for expenses and attorneys' fees, pursuant to 33 U.S.C. § 1365(d) and any other applicable laws;

F.    A jury trial on all issues raised in this complaint; and

G.    An award of such other relief as the Court deems just and proper.

Respectfully submitted on April 20, 2023.

/s/ E. Righton J. Lewis
E. Righton J. Lewis
Georgia Bar No. 215211
**BUTLER SNOW LLP**
1170 Peachtree Street NE
Suite 1900
Atlanta, Georgia 30309
(678) 515-5064 Telephone
(678) 515-5001 Facsimile
righton.lewis@butlersnow.com

John A. Brunini [MS Bar No. 100065]
Laura D. Heusel [MS Bar No. 105470]
**BUTLER SNOW LLP**
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39157
John.Brunini@butlersnow.com
Laura.Heusel@butlersnow.com
*Pro hac vice application pending*

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 20, 2023 I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system. I hereby further certify that I will serve in accordance with

Fed. R. Civ. P. 4(h) a true and correct copy of the foregoing to the following:

Mr. Henry Vassa Cate
2502 Frederica Road
St. Simons Island, GA 31522-1971

Mr. John P. McQuigg, Agent
Village Creek Landing, LLC
504 Beachview Drive, Suite 3-D
St. Simons Island, GA  31522
*john@msclawga.com*

Mr. Jason Tate, Agent
Village Creek Associates, LLC
PO Box 20452
St. Simons Island, GA, 31522
*Jtate@robertstate.com*

Mr. Vassa Cate, Agent
Missoe LLC
313 Planation Chase
St. Simons Island, GA, 31522

Mr. Vassa Cate, Agent
Creek Holdings III, LLC
313 Planation Chase
St. Simons Island, GA, 31522

Jason Tate, Agent
Palmetto Building Group
2487 Demere Road, Suite 400
St. Simons Island, GA  31522
*Jtate@robertstate.com*

*/s/ E. Righton J. Lewis*
E. Righton J. Lewis
S.D. Ga. Fed. ID No. 215211