IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JOSEPH DAVIS; JANE FRASER;      *
JACKIE MAGNANT; ROSE MURPHY;    *
and DEREK HURRAY,               *
                                *
        Plaintiffs,             *
                                *
             v.                 *        CV 223-051
                                *
HENRY VASSA CATE; VILLAGE       *
CREEK ASSOCIATES, LLC; MISSOE,  *
LLC; CREEK HOLDINGS III, LLC;   *
PALMETTO BUILDING GROUP; and    *
VILLAGE CREEK LANDING, LLC,     *
                                *
        Defendants.             *

------------

**O R D E R**

------------

Presently pending before the Court are Defendant Village Creek Landing, LLC's ("VCL") partial motion to dismiss (Doc. 42), Defendants Henry Vassa Cate, Creek Holdings III, LLC, Missoe, LLC, Palmetto Building Group, and Village Creek Associates, LLC's (collectively, the "VCA Defendants") partial motion to dismiss (Doc. 43), Plaintiffs' motion for a hearing (Doc. 56), and Plaintiffs' motion to strike the VCA Defendants' reply to response to supplemental authority (Doc. 64). For the following reasons, VCL's partial motion to dismiss is **GRANTED IN PART and DENIED IN PART**, Plaintiffs' motion to strike is **GRANTED IN PART and DENIED IN PART**, Plaintiffs' motion for a hearing is **DENIED,** and the VCA

Defendants' partial motion to dismiss is **GRANTED IN PART and DENIED IN PART.**

## I. BACKGROUND

Plaintiffs filed their First Amended Complaint (the "Complaint") on July 18, 2023. (Doc. 38.) They bring four claims against Defendants: (1) Unauthorized Discharge of Dredge and Fill Material into Jurisdictional Wetlands Without a Permit in Violation of the Clean Water Act ("CWA") 33 U.S.C. §§ 1311(a), 1344, 1365(a), and 1365(f); (2) Noncompliance with Section 401 of the CWA 33 U.S.C. §§ 1311(a), 1341, 1365(a), and 1365(f); (3) Failure to Implement and Maintain Best Management Practices ("BMPs") for Erosion and Sediment Control as Required under the Georgia Environmental Protection Division ("Georgia EPD") General National Pollutant Discharge Elimination System ("NPDES") Permit No. GAR10003 in Violation of CWA 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f); and (4) Attorneys' Fees, Costs, and Expenses under CWA 33. U.S.C. § 1365(d). (Id. at 26-29.) The relevant facts are as follows.

Plaintiffs bring this civil citizen suit under the Federal Water Pollution Control Act, commonly referred to as the CWA, 33 U.S.C. §§ 1251 et seq. (Id. at 2.) The VCA Defendants are the developers of the construction project known as The Park at Village Creek (the "Park"), an approximately 6.7-acre residential

subdivision on St. Simons Island, Georgia. (Id.) Defendant Creek Holdings III, LLC ("Creek Holdings") is the owner and developer of land contiguous to and located north of The Park. (Id. at 3.) Defendant Village Creek is the owner and developer of Village Creek Landing. (Id.) Plaintiffs allege Defendants cleared, graded, and filled wetlands and other waters subject to the jurisdiction of the United States Army Corps of Engineers (the "Corps") without CWA permits. (Id.) Defendants also utilized mechanical equipment to remove woody vegetation from marshlands regulated under Georgia's Coastal Marshlands Protection Act, O.C.G.A. § 12-5-280 et seq. ("CMPA"). (Id.) The Work resulted in the destruction and fill of jurisdiction waters of the United States without a CWA § 404 permit or a CWA § 401 water quality certification, in continuing violation of the CWA. (Id. at 1-2.) Defendants failed to properly install and maintain erosion controls on disturbed areas as required under their CWA § 402 permit. (Id. at 2.) They also conducted construction activities on areas without a CWA § 402 permit, resulting in the discharge of polluting sediment-laden stormwater into wetlands and other water in and near the Park, including Village Creek, in violation of the CWA. (Id.) Village Creek is a jurisdictional water of the United States influenced by the ebb and flow of the tide. (Id.)

Plaintiffs sent Defendants a letter on December 22, 2022 (the "Notice Letter") notifying them of their violations under the CWA and of Plaintiffs' intent to file suit for such violations after sixty (60) days, as required by 40 C.F.R. § 135.2(a)(1). (Id. at 10.) The Notice Letter was also sent to Georgia Department of Natural Resources ("DNR"), the United States Environmental Protection Agency ("EPA"), and the Corps as required by CWA § 505(b). (Id.) Despite the Notice Letter, Defendants refused and failed to cease violations of the CWA. (Id. at 11.) Plaintiffs allege the CWA violations continued at the time of filing this suit and are reasonably likely to continue. (Id.)

Both the VCA Defendants and VCL move to partially dismiss certain claims against them. (Docs. 42, 43.) Plaintiffs responded in opposition (Docs. 46, 47), and Defendants replied (Docs. 52, 53.) The VCA Defendants also filed supplemental authority (Doc. 55-1), Plaintiffs responded (Doc. 61), and the VCA Defendants replied (Doc. 63). Plaintiffs object and move to strike the VCA Defendants' reply to the supplemental briefing. (Doc. 64.)

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by*

4

_Davis v. Scherer_, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009) (quoting _Twombly_, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." _Twombly_, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" _Iqbal_, 556 U.S. at 678 (quoting _Twombly_, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. _Id._ at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." _Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist._, 992 F.2d 1171, 1174 (11th Cir. 1993) (citing _Exec. 100, Inc. v. Martin Cnty._, 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III. DISCUSSION

The Court addresses each motion in turn.

**A. VCL's Partial Motion to Dismiss**

VCL moves to dismiss Plaintiffs' claims that were not sufficiently identified in their Notice Letter. (Doc. 42, at 5 (citing Doc. 38-7).)

### 1. Locations Identified in Notice Letter

First, VCL argues Plaintiffs only gave it sufficient notice of challenged CWA violations caused by "land clearing, grading, filling and construction activities in the residential subdivision known as [the Park]." (Id. (citing Doc. 38-7, at 2).) It argues that Plaintiffs try to expand their allegations of CWA violations to other activities and locations beyond those identified in the Notice Letter, alleging CWA violations east of the Park. (Id. at 5-6.) VCL argues Plaintiffs' Notice Letter only identified CWA violations related to work performed *inside* the Park, and, arguably, in a small area *north* of the Park. (Id. at 6.) There were no other areas or activities identified in the Notice Letter, so VCL argues all other claims are barred and subject to dismissal. (Id.)

In response, Plaintiffs argue their Notice Letter is legally sufficient and identified the point source for the discharge of pollutants resulting from the Work done on VCL's property. (Doc. 46, at 2.) They argue the Notice Letter contained a photo - Photo

I - with a bright yellow outline of the area of interest, and the photo leaves no doubt that VCL's property is part of the allegations. (Id. at 4.)  In reply, VCL argues Plaintiffs fail to acknowledge the self-limiting scope of the Notice Letter, "which was clearly restricted to apprising Defendants of an alleged CWA violation caused by work *within* the [Park] and, arguably, an area to the north of lot 10 in the subdivision." (Doc. 52, at 2.)  VCL argues Plaintiffs' brief simply ignores the self-imposing limitation they provided in the Notice Letter. (Id. at 3.)

Before a citizen suit can be brought, a citizen must provide the alleged violator 60-day notice of their intent to sue.  33 U.S.C. § 1365(b)(1)(A); Hallstrom v. Tillamook Cnty., 493 U.S. 20, 31 (1989) ("[T]he notice and 60-day delay requirements are mandatory conditions precedent to commencing suit under the [] citizen suit provision.").  "[T]he purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the [CWA] and thus likewise render unnecessary a citizen suit." Gwaltney of Smithfield v. Chesapeake Bay Found., 484 U.S. 49, 60 (1987).  EPA regulations provide the notice letter must include

> sufficient information to permit the recipient to
> identify the specific standard, limitation, or order
> alleged to have been violated, the activity alleged to
> constitute a violation, the person or persons
> responsible for the alleged violation, *the location of*

> *the alleged violation*, the date or dates of such violation, and the full name, address, and telephone number of the person giving the notice.

40 C.F.R. § 135.3(a) (emphasis added).

Plaintiffs sent VCL a notice letter on December 22, 2022. (Doc. 38-7, at 2.) VCL first argues the Notice Letter is deficient in identifying the location of the alleged violation. (Doc. 42, at 6.) The Notice Letter states Plaintiffs seek redress for "environmental harm caused by ongoing development of [the Park] residential subdivision located along South Harrington Road." (Doc. 38-7, at 2.) Plaintiffs argue the pictures in the Notice Letter should have provided VCL notice that its land was included as part of the alleged violations. (Doc. 46, at 5-7.) Further, Plaintiffs argue the Notice Letter contained an overhead photo outlining the impacted area, which "leaves no doubt that VCL's property is part of the allegations." (Id. at 4 (citing Doc. 38-7, at 8).) Plaintiffs also argue "VCL's attempt to distinguish between [the Park] and [VCL] is a distinction without a difference." (Id. at 5.)

It is "the Eleventh Circuit's direction that 'notice requirements are strictly construed to give the alleged violator the opportunity to correct the problem before a lawsuit is filed.'" Johnson v. 3M, 563 F. Supp. 3d 1253, 1281 (N.D. Ga. 2021) (quoting Kendall v. Thaxton Rd. LLC, 443 F. App'x 338, 392 (11th Cir. 2011)). However, "[t]he notice requirement does not

demand that a citizen plaintiff 'list every specific aspect or detail of every alleged violation.'" Id. at 1282 (quoting Nat'l Parks & Conservation Ass'n, Inc. v. Ten. Valley Auth., 502 F.3d 1316, 1329 (11th Cir. 2007)). However, it must "provide enough information to permit the recipient to identify the allegedly violated standards, dates of violation, and relevant activities, with sufficient specificity." Id. (quotation marks and citation omitted and alterations adopted). In other words, "the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." Id. (citation omitted).

The Notice Letter "is addressed to [Defendants] all of whom have failed to comply with provisions of the [CWA] in the course of ongoing land clearing, grading, filling and construction activities *in the residential subdivision* known as [the Park]." (Doc. 38-7, at 2 (emphasis added).) It states that "[i]n addition to destroying wetlands without a permit and failing to properly implement erosion and sediment control [BMPs], Defendants *removed woody vegetation from marshlands* regulated under Georgia's [CMPA]." (Id. at 3.) And that

> Defendants' Work has and continues to deposit dredged and fill materials *into jurisdictional wetlands and marshlands adjacent to Village Creek*, a waterbody influenced by the ebb and flow of the tide. In addition, the Work has caused stormwater carrying sediment and other pollutants *to enter jurisdictional wetlands, coastal marshland, and Village Creek*.

9

(Id. (emphasis added).)   Plaintiffs state they "observed impacts to wetlands that extend into the marshland buffer at Village Creek and also north of the platted area of [the Park]" and that "developers removed nearly all of the coastal vegetation from the CMPA buffer along [the Park] and S. Harrington Road."  (Id. at 10.)

While true the Notice Letter initially stated it was for actions *in* the Park subdivision, the allegations throughout it broaden the location limitations that could have been imposed. (See id. at 3.)  Given the Eleventh Circuit's indication that "the notice requirement does not demand a citizen plaintiff list every specific aspect or detail of every alleged violation," the Court finds the Notice Letter was sufficient to put VCL on notice of potential allegations against it.   Nat'l Parks & Conservation Ass'n, 502 F.3d at 1329 (citation and quotation marks omitted). The attached photos also provide the context and indication that Plaintiffs are concerned with work beyond what took place explicitly *inside* the Park.  (See Doc. 38-7, at 8, 16-17.)  Based on these findings, VCL's motion to dismiss is **DENIED** on this ground.

## 2. Identification of Point Source

Next, VCL moves to dismiss because Plaintiffs' Notice Letter failed to identify a point source of discharge for any alleged pollutant.  (Doc. 42, at 3-4.)  It argues the claims for CWA

violations on land east of the Park are barred because the Notice Letter fails to identify a point source of discharge from that land. (Id. at 17.) VCL argues that "[f]ailure to identify a point source responsible for discharge of a pollutant into the waters of the United States in a pre-suit [notice letter] is fatal to a plaintiff's CWA suit." (Id. at 18 (citing Karr v. Hefner, 475 F.3d 1192, 1203 (10th Cir. 2007)).) In response, Plaintiffs argue Eleventh Circuit precedent is broad in its holdings of point sources; thus, they have sufficiently pled a point source for the claims here. (Doc. 46, at 9-11 (citations omitted).)

"To establish a CWA violation, a citizen-plaintiff must prove the defendant (1) discharges a pollutant (2) into 'navigable waters' (3) from a point source (4) without a NPDES permit." Flint Riverkeeper, Inc. v. S. Mills, Inc., 276 F. Supp. 3d 1359, 1365 (M.D. Ga. 2017) (quoting Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1008 (11th Cir. 2004)). "Point source" means "any *discernible, confined and discrete conveyance*, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14) (emphasis added). The Notice Letter defines point source and lists case law explaining what a point source is, but it fails to

explicitly identify the point source relevant to VCL.  (Doc. 38-7, at 13.)

The Eleventh Circuit interprets the term "point source" broadly.  Flint Riverkeeper, 276 F. Supp. 3d at 1367 (citing Parker, 385 F.3d at 1009)).  However, the Court takes issue with Plaintiffs' failure to indicate what the point source involving VCL may be.  Plaintiffs' Notice Letter conclusory states that "[t]he Work at [the Park] has resulted in unauthorized impacts and destruction of wetlands due to Defendants' failure to implement and maintain BMPs to prevent or minimize erosion and *sedimentation run-off from the subdivision*."  (Doc. 38-7, at 14 (emphasis added).)  And that "Defendants' failure to properly install and maintain BMPs *has and will continue to result in pollutants being discharged into waters of the United States* and adjacent wetlands in violation of the Clean Water Act."  (Id. at 23 (emphasis added).)  Additionally, the Notice Letter provides that "the Work has caused *stormwater* carrying sediment and other pollutants to enter jurisdictional wetlands, coastal marshland, and Village Creek."  (Id. at 3 (emphasis added).)  Plaintiffs argue they properly notified VCL of the point source conveying pollutants into Village Creek through "disturbed soils, sediment, mulch, and fill material left by equipment used for clearing and grading."  (Doc. 46, at 11.)

The Court finds the Notice Letter fails to identify "any discernible, confined, and discrete conveyance" from which pollutants are being discharged into navigable waters. 33 U.S.C. § 1362(14). As outlined above, EPA regulations require a notice letter contain "sufficient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated" so it can correct or remedy the violation. 40 C.F.R. § 135.3. Here, there is no discrete identification of the point source that VCL would have been able to use to correct its alleged violations. Although Plaintiffs cite _Parker_ for finding earth-moving equipment was a point source itself, they fail to take an all-encompassing view of _Parker_'s holding. (Doc. 46, at 10 (citing _Parker_, 386 F.3d at 1009).) The plaintiffs in _Parker_ produced evidence of erosion gullies leading downhill to the stream, debris strewn on the property, _and_ various machines. 386 F.3d at 1009. The Court indicated these were point sources because they collected water which flowed into the stream. _Id._ While Plaintiffs' Notice Letter contains photos of some heavy equipment in the work area, there are no allegations of "any discernible, confined, and discrete conveyance" by which water was discharged into Village Creek beyond the presence of the equipment. 33 U.S.C. § 1362(14). Plaintiffs rely on _Parker_ because of the similarity of heavy equipment, but the presence of equipment alone is not enough to identify a point source, or the

exact conveyance of the pollutants. Without such specifics, Plaintiffs failed to provide VCL proper notice of an identifiable point source, and this claim fails. As such, VCL's motion to dismiss (Doc. 42) is **GRANTED** as it pertains to Plaintiffs' CWA claims for alleged pollutants caused by any work east of the Park.

**B. Plaintiffs' Motion to Strike**

The VCA Defendants filed supplemental briefing (Doc. 55-1), which the Court approved and instructed Plaintiffs to file a response (Doc. 60). Plaintiffs responded (Doc. 61) and the VCA Defendants filed a reply (Doc. 63). Plaintiffs have objected and moved to strike the VCA Defendants' reply, arguing the VCA Defendants raise new arguments and additional authority. (Doc. 64, at 1.) In response, the VCA Defendants argue the motion to strike is misplaced, and their reply contains no new arguments, but responds to arguments Plaintiffs advanced for the first time in their response to the supplemental briefing. (Doc. 65, at 1.)

The Court provided no instructions that the VCA Defendants could not reply to the supplemental briefing, or that Plaintiffs could not file a response to any reply. However, since Plaintiffs indicate they needed leave of Court to respond, and such was not provided, the Court **GRANTS IN PART** their motion. If the VCA Defendants raise new arguments in their reply, the Court will not consider them. But the Court will consider any arguments in response to Plaintiffs' briefing in determining the motion to

dismiss.  Based on these findings, Plaintiffs' motion to strike (Doc. 65) is **GRANTED IN PART and DENIED IN PART.**

## C. VCA Defendants' Partial Motion to Dismiss

The VCA Defendants move to dismiss Counts Two and Four, and a portion of Count Three for failure to state a claim under any provision of the CWA.  (Doc. 43, at 1-2.)  In response, Plaintiffs argue the VCA Defendants' motion should be denied.  (Doc. 47.) The Court considers the Parties' arguments for each Count.

### 1. Count Two

Count Two alleges Defendants were not authorized to place fill material in the Village Creek Wetlands, so they did not comply with the § 401 Water Quality Certification ("WQC") issued by the Georgia EPD.  (Doc. 38, at 27.)  As a result, Defendants' filling of the wetlands did not comply with CWA § 401 and amounts to an illegal discharge into the waters of the United States under CWA § 301(a).  (Id.)  The VCA Defendants argue Count Two should be dismissed for lack of subject matter jurisdiction because the CWA does not authorize a citizen suit under 33 U.S.C. § 1365 for *failing to obtain* a § 1341 certification, *only to enforce a certificate*.  (Doc. 43, at 12.)  Plaintiffs argue citizens can sue both for failure to obtain a § 401 WQC and to enforce its conditions.  (Doc. 47, at 7.)

For citizen suits, the CWA provides district courts with jurisdiction "to enforce [] an effluent standard or limitation."

33 U.S.C. § 1365(a). The VCA Defendants' argument that subject matter jurisdiction does not exist requires interpretation of the CWA's definition of "an effluent standard or limitation." This requires analyzing § 1365(f) which defines "an effluent standard or limitation" by providing eight specific categories of statutory violations that can be enforced by citizen suits. Two categories could be relevant here. (Doc. 43, at 13.) First, citizen suits are authorized for any "unlawful act" under § 1311(a). See 33 U.S.C. § 1365(f)(1) (defining "effluent standard or limitation" as "an unlawful act under subsection (a) of section 1311 of this title"). Second, an "effluent standard or limitation . . . means . . . a certification under section [1341]." 33 U.S.C. § 1365(f)(6). The VCA Defendants argue Count Two is not authorized under either category. (Doc. 43, at 13.)

As to the first definition of any "unlawful act" under § 1311(a), the VCA Defendants correctly argue § 1311(a) does not apply. (Id.) Plaintiffs do not dispute this. (See Doc. 47.) Plaintiffs allege "Defendants' filling of the Village Creek Wetlands was not in compliance with [§ 1341] and the fill in the Village Creek Wetlands is an illegal discharge into the waters of the United States pursuant to [§ 1311(a)]." (Doc. 38, at 27.) However, § 1311(a) only makes it unlawful to discharge pollutants into jurisdictional waters "except in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344." (Doc. 43,

at 13 (quoting 33 U.S.C. § 1311(a)).) Importantly, § 1341 is absent from this list. Therefore, even if Plaintiffs sufficiently alleged the VCA Defendants did not comply with § 1341, that would not establish an "unlawful act" occurred under § 1311(a)(1). Thus, the Court turns to the other potential application of the effluent standard or limitation.

33 U.S.C. § 1365(f)(6) authorizes suit for violation of "a certification under section 1341." The VCA Defendants argue Plaintiffs did not allege they violated "a certification," but that they acted without one, and such a citizen suit is not authorized by § 1365. (Doc. 43, at 14.) In response, Plaintiffs argue § 1365 authorizes suit for both a failure to obtain a certification and to enforce its conditions. (Doc. 47, at 7.) Both sides provided extensive argument on the interpretation of this statute in their original and supplemental briefing.

The VCA Defendants' arguments turn on the statute's use of "a" when stating "a *certification* under section 1341 of this title." (Doc. 53, at 3 (citing 33 U.S.C. § 1365(f)(6)) (emphasis added).) They believe this addition, implemented in a 2018 amendment, clarifies that citizens' authorization to sue is limited to specific certifications already in existence. (Doc. 55-1, at 2.) Despite this addition, Plaintiffs hold strong that the statute authorizes suit for enforcement *or* for lack of a certification. (Doc. 61, at 2.)

While there is no binding case directly on point, there are many illustrative cases to help the Court interpret this statute. Most Eleventh Circuit precedent, while not reaching whether suit can be brought for failure to obtain a certification, emphasizes that § 1365(f)(6) is for "citizen suits against permit holders." Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc., 734 F.3d 1297, 1304 (11th Cir. 2013); Culbertson v. Coats Am., Inc., 913 F. Supp. 1572, 1581 (N.D. Ga. 1995) ("The CWA authorizes citizen suits for the enforcement of all conditions of NPDES permits" (citing 33 U.S.C. §§ 1365(a)(1)(A), 1365 (f)(6)).). Despite these holdings, Plaintiffs urge the Court that Congress intended to provide a cause of action for a lack of a certification as well. (Doc. 47, at 7.) Plaintiffs rely on Deschutes River All. V. Portland Gen. Elec. Co., 249 F. Supp. 3d 1182, 1186 (D. Or. 2017) and Pub. Emps. for Env't Responsibility v. Schroer, No. 3:18-CV-13, 2019 WL 11274596 (E.D. Tenn. June 21, 2019), for holding that citizen suits may be brought for a lack of certification or violation thereof. (Doc. 47, at 7-8.)

In Deschutes River, the court stated "the most natural reading *permits citizen suits both to require a facility to obtain a water quality certification* and to enforce conditions contained in an existing certification." 249 F. Supp. 3d at 1188 (emphasis added). The court was not asked to determine whether there was a cause of action for failure to obtain a § 1341 permit. Id.

Instead, it was determining whether a citizen suit could enforce conditions of an existing § 1341 permit and to answer that question, the court assumed, without discussion, citizens could also sue for failure to obtain a permit. Id. Not only is this explanation considered dicta, but also, this case was decided before the letter "a" was added to the statute in 2018. Similarly, in Schroer, the court was asked to determine whether a citizen suit could be brought to enforce conditions of a § 1341 permit. 2019 WL 11274596, at *9. The court held § 1365 allowed citizens suits to enforce conditions in § 1341 permits. Id. However, the court stated Congress "incorporate[ed] the entirety of § 401 in its definition" and the incorporation entails "the entirety of ways a party can violate its [§ 1341] certification, which goes beyond the mere act or omission of its creation." Id. The court also pointed out that § 1341 "mandate[es] that applicants obtain certifications." Id.

There are also several cases involving different sub-sections of § 1365(f) that permit citizen suits regardless of whether a permit exists. See Patterson v. Barden & Robeson Corp., No. 04-CV-0803E, 2007 WL 542016, at *4 (W.D. N.Y. Feb. 16, 2007) (finding plaintiffs can bring suit under § 1365(f)(6) for defendant's failure to obtain a permit and for violating any condition of the permit once issued); Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., 73 F.3d 546, 559 (5th Cir. 1996) (Because "the discharge

of any pollutant without a NPDES permit is an unlawful act under § 1311(a) . . . a citizen may bring an action under the CWA against any person who is allegedly discharging a pollutant without a NPDES permit.") These cases extend the ability of suit to be more in line with Plaintiffs' broader interpretation of the authorization of citizen suits.

Meanwhile, the VCA Defendants rely on the Fifth Circuit's decision in <u>Atchafalaya Basinkeeper v. Chustz</u>, 682 F.3d 356 (5th Cir. 2012), to demonstrate what they consider the correct approach to interpret § 1365. (Doc. 43, at 15.) They argue this case emphasizes the distinction between enforcing the requirement to *obtain* a permit and enforcing the *conditions* of a permit. (<u>Id.</u> (emphasis in original).) In <u>Atchafalaya</u>, the court decided whether § 1365 authorizes citizen suits to enforce § 1344 permit conditions. 682 F.3d at 357. The Fifth Circuit held that the CWA does not provide citizens the right to sue to enforce the *conditions* of § 1344 permits. <u>Id.</u> at 360. <u>Atchafalaya</u> relied on the Supreme Court's warning that:

> [I]t cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens. . . . [I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.

_Id._ at 359 (quoting _Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n_, 453 U.S. 1, 14-15 (1981)). The VCA Defendants argue that the Fifth Circuit's decision is applicable because the holding was based on a close reading of the plain text of §§ 1311(a)(1) and 1365(f), and because the key textual points in _Atchafalaya_ are exactly opposite of the one at issue here, the same logic applies, but in reverse. (Doc. 43, at 15.) They argue this supports their argument that under the plain text of § 1365, the CWA authorizes citizen suits to enforce condition violations in a § 1341 certification, but not suits for failing to obtain one. (_Id._)

The Eleventh Circuit has instructed that "[w]hen analyzing statutory history, we presume that a change in the language of a statute, whether by reenactment or amendment, connotes a change in meaning." _Bourdon v. U.S. Dep't of Homeland Sec. (DHS)_, 940 F.3d 537, 544 (11th Cir. 2019) (citation and quotation marks omitted). "If possible, every word and every provision is to be given effect. None should be ignored." _Id._ (citations and quotation marks omitted and alterations adopted). When looking at the VCA Defendants' arguments regarding "a" certification, the Court utilizes the statutory interpretation rules of the Eleventh Circuit. (_See_ Doc. 53, at 3.) As the Supreme Court has analyzed in a different statutory context, "Congress's decision to use the indefinite article 'a' thus supplies some evidence that it used

the term . . . as a discrete, countable thing." <u>Niz-Chavez v.</u>
<u>Garland</u>, 593 U.S. 155, 163 (2021). A discrete, countable thing
would be an actual certification that is in existence, not the
lack thereof.

Plaintiffs argue this interpretation of the amendment would
*narrow* the scope of citizen suits and render enforcement of § 1341
nonexistent. (Doc. 61, at 2-3.) The Court disagrees. While
Plaintiffs cite to cases listed above that opined on the ability
to bring suit for lack of a certification, in opining this, the
courts were not reaching an ultimate decision of the case. Thus,
these decisions are merely dicta, and there is no clear
indication, before or after the amendment, that suit for not
having a certification was ever allowed. Also, the amendment does
not eliminate the ability to bring suit, it just clarifies that
suit is only allowed to enforce *compliance* with a certification
instead of a lack thereof. As the Court stated in <u>Atchafalaya</u>,
"it is an elemental canon of statutory construction that where a
statute expressly provides a particular remedy or remedies, a
court must be chary of reading others into it." 682 F.3d at 359
(quoting <u>Middlesex</u>, 453 U.S. at 14-15). The statute explicitly
states "a certification," and had Congress intended this
authorization to allow for suits when no certification exists, it
would have said so. Based on this reading, the VCA Defendants'
motion is **GRANTED** on this ground, and Count II is dismissed.

2. <u>Count Three</u>

Next, the VCA Defendants argue part of Count Three, regarding work on the single-family lot owned by Creek Holdings, should be dismissed. (Doc. 43, at 17.) Plaintiffs allege Defendants violated § 1342 by not complying with GAR100003, the general permit regulating stormwater from "common development" construction. (<u>Id.</u> (citing Doc. 38, at 28-29).) The VCA Defendants argue these allegations fall into two categories – work inside the Park and work outside the Park. (<u>Id.</u>) The work outside the Park refers to activities on property owned by Creek Holdings that is adjacent to, but separate from, the Park. (<u>Id.</u>) As such, the VCA Defendants argue this portion of the claim should be dismissed because work on that property is not subject to the requirements of GAR10003. (<u>Id.</u>) They assert Creek Holdings' property is less than one acre and not part of the common development of the Park. (<u>Id.</u> at 2.) They argue it is a "stand-alone construction project" for constructing a "single-family lot," so the VCA Defendants are not required to have a NPDES permit. (<u>Id.</u> at 19.)

In response, Plaintiffs argue the VCA Defendants' characterization of the "single-family lot" is inaccurate because, more likely than not, it was part of the larger common development and subject to CWA regulation. (Doc. 47, at 9.) Plaintiffs assert their allegations in the Complaint are sufficient to plead

Creek Holdings' property is part of the common plan, and photographic evidence provides proof the property is part of the construction for the Park. (Id. at 14.)

Plaintiffs allege Defendants violated § 1311 because their pollution discharge was not compliant with § 1342, which requires a NPDES permit in given circumstances. (Doc. 38, at 28-29.) Plaintiffs allege Defendants' discharge did not comply with GAR100003, the NPDES permit issued for the Park, because Defendants' failure to maintain BMPs "caused discharges of sediment-laden stormwater to flow into and remain in the Village Creek Wetlands and other waters of the United States." (Id. at 29.) NPDES permits are required in two relevant circumstances: (1) for "construction activities including clearing, grading, and excavating that result in land disturbance of equal to or greater than one acre and less than five acres" 40 C.F.R. § 122.26(b)(15)(i); and (2) for construction activities that cause "the disturbance of less than one acre of total land area that is part of a larger common plan of development or sale if the larger common plan will ultimately disturb equal to or greater than one and less than five acres" 40 C.F.R. § 122.26(b)(15)(i). GAR100003[1] defines a "common development" as "a contiguous area where multiple, separate, and distinct construction activities will be

---

[1]    Available for download from the Georgia EPD at, https://epd.georgia.gov/forms-permits/watershed-protection-branch-forms-permits/storm-waterforms/npdes-construction-storm.

taking place at different times on different schedules under *one plan* of development." Permit No. GAR100003 at 4, Part I.b.6 (emphasis added).

There are no allegations in the Complaint and the Parties do not seem to dispute Creek Holdings' property is less than one acre. (See Docs. 38, 47.) So, Plaintiffs need to have sufficiently pled that the property is part of the common development plan of the Park to survive the motion to dismiss. Plaintiffs argue they did so by alleging Creek Holdings "is the owner and/or developer of certain tracts or parcels of land situated in the Park"; providing Figure 1, which shows the BMPs, recently clear vehicle paths, silt fences, and building materials appear in aerial photos of Creek Holdings' property in sync with the building activities in the Park; and the access road marked for the Park appears to be the only way to enter and exit Creek Holdings' property. (Doc. 47, at 9-10 (citing Doc. 38, at 4, 7; Doc. 38-5).) In reply, the VCA Defendants assert Plaintiffs' Complaint negates their arguments because it states Creek Holdings' land is "*contiguous to and located north of* the Park." (Doc. 53, at 9 (citing Doc. 38, at 3.) They argue that if a property is contiguous to and north of the Park, then it is not part of the same development. (Id.) The VCA Defendants also point to the documents attached to the Complaint that show Creek Holdings' property is not part of the Park – specifically,

materials from the land disturbing activity permit which include drawings that exclude the property; the final plat for the Park which excludes the property; an application for the subdivision of the Park which excludes the property; Glynn County's approval of the final plan which excludes the property; and the final approved land disturbing activity plan which also excludes it. (Id. at 10 (citing Docs. 38-2, 38-5, 38-6, 38-14, 38-15).)  They argue Plaintiffs' cited photos, Figure 1 and an aerial photograph, show Creek Holdings' property is being developed, but they do not imply it is part of the "common plan of development" of the Park. (Id.)

The Complaint does not explicitly allege the Creek Holdings' property is part of a "common plan of development" with the Park. (See Doc. 38.)  Thus, the Court turns to whether Plaintiffs' other allegations and photographs amount to a possible allegation of such.  In arguing the development of Creek Holding's property was part of a common plan, Plaintiffs rely on Gulf Restoration Network v. Hancock Cnty. Dev., LLC, 772 F. Supp. 2d 761 (S.D. Miss. 2011). (Doc. 47, at 13.)  There, the court determined whether the defendant's building of canals, roads, and clearings were a part of a common plan of development.  Gulf Restoration, 772 F. Supp. 2d at 769.  To make that determination, the court relied on "[p]lans for the Town of Stennis plus [] county maps show[ing] there [was] a larger plan of development."  Id.  Because the work

defendant performed "follow[ed] the plans for this development project," the court found it was part of a common plan of development. Id. Plaintiffs urge the Court to rely on aerial photography to make the same conclusion about Creek Holdings' property. (Doc. 47, at 13.) However, as Defendants point out, the instant case is different because there are no "actual plans for the common development" creating an inference that the Creek Holdings Property is being developed as part of a common development including the Park. (Doc. 53, at 12.)

Plaintiffs also rely on Glynn County's definition of common plan of development to support that Creek Holdings' property was part of a common plan. (Doc. 47, at 13.) Glynn County ordinances define a "Larger Common Plan of Development or Sale" as

> a contiguous area where multiple separate and distinct construction activities are occurring under one plan of development or sale. For the purposes of this paragraph, "plan" means an announcement; piece of documentation such as a sign, public notice or hearing, sales pitch, advertisement, drawing, permit application, zoning request, or computer design; or physical demarcation such as boundary signs, lot stakes, or surveyor markings, indicating that construction activities may occur on a specific plot.

GLYNN CNTY., GA., CODE OF ORDINANCES Ch. 2-5, Art. VII, § 2-5-101(25) (2023). Plaintiffs have not pointed to one plan but rely on the silt fences installed on the Creek Holding property to argue the plan is shown by lot stakes or markings under this Glynn County

ordinance.   (Doc. 47, at 13-14.)   The Court is not convinced by these arguments.

The bottom line is Plaintiffs failed to allege Creek Holdings' property was part of the same plan as the Park.   While some photographs may indicate it was also under construction, the presence of silt fences on it and around the Park is not enough to sufficiently allege Creek Holdings' property was part of the common plan of development.   As defined above, a "common development" requires different construction activities taking place under *one plan* of development.   Permit No. GAR100003 at 4, Part I.b.6.  Plaintiffs' own attachments to the Complaint support that Creek Holdings' property was not involved in the Park's permitting and planning process but was a separate property that just was adjacent to the Park.  (See Doc. 38-5, at 2; Doc. 38-15, at 4.)   Since there are no allegations Creek Holdings' property is part of the common development of the Park, the Court finds it is a stand-alone construction project.   As such, stormwater discharges on it, since it is less than one acre, are not regulated under the CWA and no NPDES permit was required.   Thus, the VCA Defendants' motion is **GRANTED** as it relates to the part of Count Three relating to work conducted on Creek Holdings' property outside the Park.

### 3. Count Four

Finally, the VCA Defendants argue Count Four should be dismissed for failure to state a claim because it is a prayer for relief and not a cause of action in its own right. (Doc. 43, at 20.) Plaintiffs argue this claim is necessary because attorney's fees, while important in citizen suits, are "not automatic." (Doc. 47, at 1 (citing Davis v. Jackson, 776 F. Supp. 2d 1314, 1318 (M.D. Fla. 2011)).)

Count Four moves for attorneys' fees, costs, and expenses under CWA § 1365(d). (Doc. 38, at 29.) Plaintiffs also move for attorneys' fees in their prayer for relief. (Id. at 30.) The VCA Defendants' main argument is this duplication adds nothing but clutter to the case. (Doc. 43, at 20 (citing Martinez v. Safariland, LLC, No. 21-12028, 2022 WL 621012, at *4 (D.N.J. Mar. 3, 2022)).) The Parties do not seem to dispute that an award of attorney's fees may be possible under CWA § 505. (See Doc. 53, at 13.)

The Court agrees Count Four is duplicative and unnecessary, as Plaintiffs already request attorney's fees under the same statute in the prayer for relief. Diamond v. Morris, Manning & Martin, LLP, No. 1:09-CV-2894, 2010 WL 11507021, at *5 (N.D. Ga. May 24, 2010), report and recommendation adopted, No. 1:09-CV-2894-TCB, 2010 WL 11509124 (N.D. Ga. June 18, 2010) ("Plaintiff's multiple requests for attorney's fees are duplicative and

unnecessary."); see also Pillitieri v. City of Flagler Beach, No. 3:16-CV-1121, 2017 WL 3840433, at *2 (M.D. Fla. Sept. 1, 2017) ("[R]equests for attorneys' fees do not constitute a separate cause of action."). To make litigation as straightforward and streamlined as possible, the Court **GRANTS** the VCA's Defendants' motion to dismiss Count Four as duplicative.

Because the motions were thoroughly briefed, including with supplemental briefing, the Court finds no need to conduct a hearing on the matter. As such, Plaintiffs' motion for a hearing (Doc. 56) is **DENIED**.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that VCL's partial motion to dismiss (Doc. 42) is **GRANTED IN PART and DENIED IN PART**, Plaintiffs' motion to strike (Doc. 64) is **GRANTED IN PART and DENIED IN PART**, Plaintiffs' motion for a hearing (Doc. 56) is **DENIED**, and the VCA Defendants' partial motion to dismiss (Doc. 43) is **GRANTED IN PART and DENIED IN PART**. Based on the foregoing, Plaintiffs' CWA claims for alleged pollutants caused by any work east of the Park are dismissed as to VCL, Count Two is dismissed, Count Three relating to work conducted on Creek Holdings' property outside the Park is dismissed, and Count Four is dismissed.

**ORDER ENTERED** at Augusta, Georgia, this _26th_ day of March, 2024.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA