UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JOSEPH DAVIS, JANE FRASER,　　　　*
JACKIE MAGNANT, ROSE MURPHY,　　*
and DEREK MURRAY,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　Plaintiffs,　　　　*
　　　　　　　　　　　　　　　　　*
　　　v.　　　　　　　　　　　　　*　　　Civil Action No. 2:23-cv-051
　　　　　　　　　　　　　　　　　*
HENRY VASSA CATE, VILLAGE　　　　*
CREEK ASSOCIATES, LLC, MISSOE,　 *
LLC, CREEK HOLDINGS III, LLC,　　 *
PALMETTO BUILDING GROUP, and　　 *
VILLAGE CREEK LANDING, LLC.　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　Defendants.　　　　*


**DEFENDANT VILLAGE CREEK LANDING, LLC'S
REPLY BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**


COMES NOW Defendant Village Creek Landing, LLC ("VCL") and files this reply brief in support of its motion for protective order (Doc. 120), showing this Court as follows:

## INTRODUCTION

Plaintiffs' response to VCL's motion for protective order (Doc. 124) can be distilled down to the same flawed argument made in response to VCL's motion for summary judgment – that the Park at Village Creek (the "Park") subdivision encompasses VCL's property to the east of the 6.7-acre, 25-lot subdivision's boundaries and specifically includes Parcel ID 04-15704, which is an approximate 1.13-acre strip of undeveloped land owned by VCL ("VCL Property"). Thus, Plaintiffs argue that they should be able to conduct extensive discovery related to the VCL Property because, to Plaintiffs' thinking, the claims related to this property remain in the case despite this

1

Court's Order granting VCL's partial motion to dismiss, which dismissed all CWA claims east of the Park subdivision (*See* Doc. 66).

Plaintiffs' position that the VCL Property is actually part of the Park subdivision directly contradicts Plaintiffs' NOI Letter and Amended Complaint (and its attached surveys, Final Plat, subdivision application, subdivision-approval documents, engineering drawings and maps) showing otherwise. Plaintiffs' NOI Letter designating the Park subdivision as being limited to what it is (a 25-lot, 6.7-acre subdivision that excludes the VCL Property to the east), is the same allegation Plaintiffs make in the Amended Complaint wherein they describe the Park subdivision as "an approximately 6.7-acre residential subdivision on St. Simons Island, Glynn County, Georgia" (Doc. 38 at 2, ¶ 3). Again, the surveys, Final Plat, subdivision application, subdivision-approval documents, engineering drawings, and maps attached to the NOI Letter and Amended Complaint as exhibits depict and delineate the boundaries of the Park, clearly establishing that it does not include the 1.13-acre VCL Property to the east (*See e.g.*, Doc. 38-3; Doc 38-5, at 2; Doc. 38-6, at 2-3; Doc. 38-9; Doc. 38-10; Doc. 38-11, at 11-12; Doc. 38-14; Doc. 38-15; Doc. 38-16; Doc. 38-17, at 1-3; Doc. 38-18).

VCL's pending motion for summary judgment establishes that it did not perform, control, or direct any work inside the 6.7-acre subdivision (*See* Doc. 82). Plaintiffs – desperate to hold onto their claims – argue for the first time that the Park subdivision is not what they pled it was (a 6.7-acre, 25-lot subdivision), but is actually a 7.8-acre (plus) subdivision that now somehow includes the VCL Property (Parcel ID 04-15704). This argument runs counter to: (1) the position taken by Plaintiffs in opposing VCL's partial motion to dismiss, (2) this Court's Order granting VCL's partial motion to dismiss, (3) the subdivision documents attached and incorporated into

Plaintiffs' NOI Letter and Amended Complaint, and (4) the undisputed declarations of the surveyor and county official submitted in support of VCL's motion for summary judgment.[1]

Plaintiffs' response to VCL's motion for protective order addresses none of these issues and that silence is telling. Instead, Plaintiffs point to three things that they believe create a disputed question of fact as to the boundaries of the Park and the intention of this Court in dismissing all CWA claims east of the Park subdivision. First, Plaintiffs point to a single aerial photograph incorporated into the NOI Letter that predates the platting and creation of the Park subdivision. Plaintiffs argue that this aerial photograph (with a self-created boundary purporting to show the "rough area of interest in yellow"), establishes the Park is larger than the 6.7-acre, 25-lot subdivision they allege it to be in their NOI Letter and Amended Complaint. Second, Plaintiffs point to an internet-generated hearsay printout from qPublic.net that was not in the record prior to this Court's ruling on VCL's partial motion to dismiss. Finally, Plaintiffs argue that old CMPA jurisdictional line surveys that predate the platting and creation of the Park subdivision somehow create a dispute as to the boundaries of the Park at the time the challenged work was performed. For the reasons discussed below, none of these arguments is remotely persuasive. VCL respectfully submits that this Court was not confused about the intended scope of its Order (Doc. 66) dismissing Plaintiffs' CWA east of the 6.7-acre Park subdivision, which includes dismissal of the CWA claims related to the VCL Property (Parcel ID 04-15704) to the east of the Park.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    The Park subdivision identified in Plaintiffs' NOI Letter and Amended Complaint does not include the VCL Property (Parcel ID 04-15704).**

---

[1] *See* Docs. 95 and 96.

In the interest of brevity, VCL refers this Court to its detailed argument on this subject set forth in its reply brief in support of VCL's motion for summary judgment (*See* Doc. 97, at 5-13). There is absolutely no confusion from the NOI Letter and Amended Complaint's attached documents, Final Plat, subdivision application, subdivision-approval documents, and numerous engineering drawings and maps that the Park subdivision referenced by Plaintiffs is a 25-lot, 6.7-acre subdivision that does not include the VCL Property to the east (Parcel ID 04-15704) (*See* e.g., Doc. 38-3; Doc 38-5, at 2; Doc. 38-6, at 2-3; Doc. 38-9; Doc. 38-10; Doc. 38-11, at 11-12; Doc. 38-14; Doc. 38-15; Doc. 38-16; Doc. 38-17, at 1-3; Doc. 38-18). This is why Plaintiffs' Amended Complaint alleges that the Park subdivision is "an approximately 6.7-acre residential subdivision on St. Simons Island, Glynn County, Georgia" and not a 7.8-acre, 26-lot subdivision (Doc. 38 at 2, ¶ 3).

Again, Plaintiffs point out three things that they believe create a disputed question of fact on whether the Park subdivision is larger than what they alleged it to be (a 6.7-acre, 25-lot subdivision) and what the documents attached to their Amended Complaint show it to be. Plaintiffs reference their NOI Letter containing an aerial photograph of property at issue in the lawsuit with a self-created border titled "rough area of interest in yellow" (Doc. 124, at 2-3). Next, Plaintiffs rely on internet-based hearsay information from qPublic.net that was not in the record at the time this Court ruled on VCL's partial motion to dismiss. *Id.* Finally, Plaintiffs cite two CMPA jurisdictional land surveys that predate the creation of the Park subdivision. *Id.* None of these things create a genuine issue of material fact as to the boundaries of the Park subdivision at the time the challenged work was undertaken or call into question this Court's understanding of the boundaries of the Park at the time of ruling on VCL's partial motion to dismiss.

**A. Aerial Photograph**.



**Photo 1. Aerial photo of the Park at Village Creek on December 3, 2020 (rough area of interest in yellow)**

Plaintiffs rely on the above photograph (and caption) to argue that the Park subdivision includes the 1.13-acre strip of land owned by VCL. It is important to note that in responding to VCL's partial motion to dismiss, Plaintiffs relied on the same aerial photograph to assert an argument that directly contradicts the argument that they now make that the photograph somehow establishes the Park includes the VCL Property. In addressing the issue of whether they had sufficiently identified in the NOI Letter the location of "[w]ork" *outside* of the Park subdivision, Plaintiffs relied on the above photograph to argue that they had sufficiently identified CWA violations to the east of the Park subdivision on the VCL Property. Plaintiffs claimed that the NOI Letter sufficiently described CWA violations "along the Park at Village Creek *and S. Harrington Road*" (Doc. 46, at 3) (Emphasis in original.). Plaintiffs' brief plainly argued that this photograph indicated that the "rough area of interest" – meaning the area of alleged CWA violations – extended beyond "today's footprint" of the Park subdivision:

> The description of the area of interest in the NOI Letter as a 'residential subdivision' does not limit the notice to today's footprint of the Park at Village Creek.

*Id.* at 4. In other words, Plaintiffs agreed that the Park subdivision did not include the VCL Property to the east along S. Harrington Road but argued the NOI Letter sufficiently identified work on the land outside "the footprint of the Park at Village Creek." *Id.* Plaintiffs incorporated in their brief in opposition to VCL's partial motion to dismiss the same aerial photo from the NOI Letter that is now relied upon to argue that the Park subdivision includes the 1.13-acre strip of land owned by VCL. *Id*. However, in relying on this photograph in response to VCL's partial motion to dismiss, Plaintiffs took that exact *opposite* position, arguing to this Court that the "bright yellow outline" or "the area of interest" extended *beyond* the Park subdivision and included "the marsh buffer along S. Harrington Road." *Id.*

Plaintiffs even went so far to argue that "VCL's attempt to distinguish between the Park at Village Creek and Village Creek Landing is a distinction without a difference" because "this case is about the impact on the Village Creek Wetlands, which have been negatively affected across property boundaries and lot lines by all the defendants named in this action, including VCL." *Id.* at 5.  Plaintiffs urged this Court to view the suit as concerning actions "related to the Village Creek Wetlands," and not simply the Park subdivision. *Id.*  Plaintiffs' new position (relying on this same photograph) – that VCL's land to the east of the Park subdivision is actually a part of the subdivision – is not only contrary to the documents, Final Plat, subdivision application, subdivision-approval documents and engineering drawings and maps attached to the NOI Letter and Amended Complaint, but it also directly contradicts Plaintiffs' prior briefing and position on the matter.  Plaintiffs' response to VCL's motion for protective order utterly fails to offer any explanation for this concerning inconsistency.

6

The above photo and caption from the NOI Letter, along with Plaintiffs' self-created yellow border, is immaterial to the actual legal boundaries of the Park subdivision at the time of the alleged work. First, as evident from the caption, the photo was taken on December 3, 2020, well before the Park was a platted subdivision and long before any of the alleged work was performed (Doc. 38-7, at 10). Co-Defendant Village Creek Associates, LLC ("VCA") – who created the Park subdivision – did not even acquire the property from P&M Cedar Products, Inc. until September 2021 (Doc. 43-1). VCL purchased the strip of land to the east of the Park (Parcel ID 04-15704) on September 1, 2022 (Doc. 43-2 and 82). As explained above, Shupe prepared surveys and the Final Plat and Roberts Civil Engineering prepared various engineering drawings in 2021 and 2022 (after the date of the photo) that all establish the true boundaries of the subdivision as excluding VCL's property to the east (Parcel ID 04-15704) (*See* Doc. 38-3; Doc 38-5, at 2; Doc. 38-6, at 2-3; Doc. 38-9; Doc. 38-10; Doc. 38-11, at 11-12; Doc. 38-14; Doc. 38-15; Doc. 38-16; Doc. 38-17, at 1-3; Doc. 38-18). VCL respectfully submits that this Court was not confused about the boundaries of the subdivision at the time the work was performed based on an aerial photograph purportedly depicting a "rough area of interest" that was generated before the subdivision was created and platted.

Beyond that, even if the edited photo was taken after Defendants purchased the property and the Park subdivision was created, Plaintiffs' labeling of a "rough area of interest" on the photograph would not create a genuine issue of material fact as to the actual boundaries of the subdivision. Plaintiffs' yellow outline on an aerial photo has no legal significance as to the legally recognized boundaries of the subdivision. In contrast, the Final Plat, subdivision-approval documents and the declarations of Nevill and Leif certainly do.

To reiterate, however, it should not be lost on this Court that Plaintiffs relied on the same 2020 photograph to argue in response to VCL's partial motion to dismiss that they had sufficiently alleged work and CWA violations *outside* of the boundaries of the Park subdivision (Doc. 46, at 3-5). This blatant contradiction has never been addressed or explained by Plaintiffs.

### B. qPublic.net record

Plaintiffs argue: "As another example, Glynn County property records indicate that the VCL Property (Parcel ID 04-15704) is within "THE PARK AT VILLAGE CREEK" Subdivision and indicate that the "Neighborhood" of this property is "The Park @ Village Creek." (Dkt. 86-2)." The referenced document (Doc. 86-2) is not a Glynn County property record but is a hearsay printout from qPublic.net pertaining to Parcel ID 04-15704 offered to show that this property's "Subdivision" classification is listed as the Park at Village Creek (Doc. 86-2). qPublic.net is a third-party web platform that hosts data pertaining to property in Glynn County. The information that is presented on qPublic printouts is patently hearsay and does not take the place of the subdivision's plat, application and approval documents, engineering drawings and maps, which are a part of the record. A disclaimer is listed at the bottom of the online web page for each parcel of property and states, in pertinent part: "Glynn County makes every effort to produce the most accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use or interpretation" (Doc. 97-2).

Federal Rule of Evidence 803(14) sets out the hearsay exception for records of documents that affect an interest in property, stating that "[t]he record of a document that purports to establish or affect an interest in property" is not excluded by the rule against hearsay only if:

(A) the record is admitted to prove the content of the original recorded document, along with its signing and its delivery by each person who purports to have signed it;

(B) the record is kept in a public office; and

(C) a statute authorizes recording documents of that kind in that office.

*Id*. The qPublic.net printouts do not meet any of these requirements. They are not signed by those who purport to have made the conveyances identified therein, they are not records kept in a public office, and there is no statute that speaks to recording qPublic.net data. The qPublic.net printouts are not substitutes for the legally recognized instruments in the record that establish the boundaries of subdivision.

Plaintiffs' reliance on this website information does not create a genuine issue of material fact as to the true parameters of the Park subdivision and whether Parcel ID 04-15704 is included within the platted subdivision. In fact, even if this internet-based information were admissible, it was not part of the Amended Complaint or record in the case when this Court ruled on VCL's partial motion to dismiss, so it cannot be used now to argue that there is ambiguity as to this Court's understanding of the boundaries or size of the Park subdivision. The information that was referenced and incorporated into Plaintiffs' NOI Letter and Amended Complaint establish that Parcel ID 04-15704 is not a part of the Park subdivision.

Moreover, the non-hearsay declarations of Gary Nevill (the surveyor who prepared the Final Plat of the Park subdivision) and Stefanie Leif (Glynn County Planning and Zoning Director involved in the plat-approval process for the Park subdivision) establish that the Park subdivision is limited to the 6.7-acre, 25 lot subdivision and does not include the VCL Property to the east (*See* Docs. 95 and 96). VCL clearly relied upon Plaintiffs' allegations about the boundaries of the Park subdivision, as verified by the documents attached to the NOI Letter and Amended Complaint, in moving to dismiss CWA claims to the east of the Park subdivision. This Court presumably relied upon this same information. Plaintiffs cannot now redefine the boundaries of the Park in total

disregard of the legal instruments in the record based upon a never-before-presented, hearsay printout from qPublic.

## C. Exhibits C and D to Amended Complaint.

Plaintiffs argue that, in addition to the foregoing, Exhibits C and D to Plaintiffs' Amended Complaint provide plats of "A Portion of Lot 1 and Lot 16A, Harrington Subdivision" which include the VCL Property as part of the area to be developed. (Dkts. 38-3, 38-4)." Exhibits C and D to Plaintiffs' Amended Complaint have zero relevance or bearing on whether the Park subdivision included the VCL Property at the time of the challenged work.

Exhibit C is a CMPA Jurisdiction Land Survey for "A Portion of Lots 16 and 16A" that was prepared by Gary Nevill in May 2021, over a year before Nevill prepared the Final Plat for the Park subdivision and well before the challenged work was performed in 2022 (Doc. 38-3). As Nevill stated in his declaration:

> I prepared a CMPA Jurisdiction Land Survey for A Portion of Lots 16 and 16A, Harrington Subdivision (what is now "The Park at Village Creek") in May 2021 for Palmetto Building Group, LLC. The survey notes that it does not include property to the east of subdivision. As shown by the Survey, I labeled the "LIMITS OF INVESTIGATION" as pointing to and including the subdivision and excluding property to the east. This survey did not include the land that is labeled as "NOW OR FORMERLY P&M CEDAR PRODUCTS, INC." The Survey did not include what is now designated by Glynn County's GIS as Parcel ID 04-15704 and Parcel ID 04-15158

(Doc. 95, ¶ 4) (Citations omitted.)  Thus, not only does this CMPA Jurisdiction Land Survey not represent in any way the boundaries of the Park subdivision (that was not its purpose and it predates the creation of the subdivision), the survey did not even involve the VCL Property to the east of the subsequently created and platted subdivision. As noted by Nevill:

> The Final Plat is for the 6.715 acre, 25-lot subdivision and does not include the property to the east of the subdivision, which is labeled on the Final Plat as Parcel

> G. The Final Plat for this subdivision does not include what is now property designated by Glynn County's GIS as Parcel ID 04-15704 and Parcel ID 04-15158.

*Id.* Plaintiffs' Amended Complaint only cites Exhibit C for the proposition that "the area" – which is now the Park subdivision – "contained jurisdictional wetlands." (Doc. 38, ¶¶ 69-70). Exhibit C offers no support for Plaintiffs' argument that there was ambiguity about the boundaries of the Park subdivision at the time of the challenged work in 2022 or that this Court was somehow confused about whether the subdivision was really a 6.7-acre subdivision consisting of 25 lots, as alleged by Plaintiffs.

Likewise, Exhibit D to the Amended Complaint is equally immaterial to the issue of the Park's boundaries at the time of the challenged work. Exhibit D is also a CMPA Jurisdiction Land Survey (Doc. 38-4). This 2016 survey pertains to "A Portion of Lot 1 and Lot 16A, Harrington Subdivision" and not the subsequently created Park subdivision (Doc. 38, ¶ 67; Doc. 38-4). This survey, which was prepared six years prior to the creation of the Park subdivision, in no way provides evidence of the Park's boundaries. In sum, old CMPA jurisdictional surveys that predate the creation and platting of the current subdivision are wholly immaterial and irrelevant to whether the VCL Property (Parcel ID 04-15704) is east of the subsequently created Park subdivision.

## II. This Court's Order granting VCL's partial motion to dismiss (Doc. 66) indicates that the Court was not confused about the boundaries of the Park subdivision.

Respectfully, it certainly does not appear that this Court had any confusion about the boundaries of the Park subdivision when ruling on VCL's partial motion to dismiss. In so doing, this Court recognized the distinction between the boundaries of the Park subdivision and VCL's property to the east of the subdivision:

> While true the Notice Letter initially stated it was for actions in the Park subdivision, the allegations throughout it broaden the location limitations that could have been imposed.

(Doc. 66, at 10). This Court was referring to Plaintiffs' allegations in the NOI Letter that they "observed impacts to wetlands that extend into the marshland buffer at Village Creek and also north of the platted area of [the Park]" and that "developers removed nearly all of the coastal vegetation from the CMPA buffer along [the Park] and S. Harrington Road." *Id*. In other words, this Court seems to have clearly and appropriately recognized that Plaintiffs' CWA claims were not limited to the location and boundaries of the Park subdivision – as established in the NOI Letter and Amended Complaint – but also included CWA claims aimed at the VCL Property to the east of the Park along S. Harrington Road. To now claim that the Park subdivision actually includes the VCL Property to the east runs counter to the controlling subdivision and development documents attached to the NOI Letter and Amended Complaint, Plaintiffs' prior briefing on the subject, and this Court's interpretation of issue in its Order on VCL's partial motion to dismiss.

## CONCLUSION

For the above-stated reasons, VCL respectfully requests that its motion for protective order be granted and that Plaintiffs be prohibited from engaging in discovery related to the dismissed CWA claims concerning the VCL Property (Parcel ID 04-15704).


[Signature on following page]

Respectfully submitted this 31st day of July 2025.

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP

*/s/ Bradley J. Watkins*
Bradley J. Watkins
Georgia Bar Number: 740299
bwatkins@brbcsw.com

**ATTORNEY FOR DEFENDANT**
**VILLAGE CREEK LANDING, LLC**

5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
Fax: (912) 264-9667

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this 31st day of July 2025.

*/s/ Bradley J. Watkins*
Bradley J. Watkins
Georgia Bar Number: 740299
bwatkins@brbcsw.com
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX


*ATTORNEY FOR DEFENDANT*
*VILLAGE CREEK LANDING, LLC*