IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JOSEPH DAVIS; JANE FRASER;      *
JACKIE MAGNANT; ROSE MURPHY;    *
and DEREK HURRAY,               *
                                *
       Plaintiffs,              *
                                *
       v.                       *       CV 223-051
                                *
VILLAGE CREEK LANDING, LLC,     *
                                *
       Defendant.               *

## O R D E R

Presently pending before the Court are Defendant Village Creek Landing, LLC's ("VCL") motion for summary judgment (Doc. 83) and Plaintiffs' consent motions to amend/correct their responses (Docs. 93, 94). For the following reasons, VCL's motion for summary judgment (Doc. 83) and Plaintiffs' consent motions (Docs. 93, 94) are **GRANTED**.

## I. BACKGROUND

Plaintiffs filed their First Amended Complaint (the "Complaint") on July 18, 2023. (Doc. 38.) They brought four claims against Defendants: (1) Unauthorized Discharge of Dredge and Fill Material into Jurisdictional Wetlands Without a Permit in Violation of the Clean Water Act ("CWA") 33 U.S.C. §§ 1311(a), 1344, 1365(a), and 1365(f); (2) Noncompliance with Section 401 of

the CWA 33 U.S.C. §§ 1311(a), 1341, 1365(a), and 1365(f); (3) Failure to Implement and Maintain Best Management Practices for Erosion and Sediment Control as Required under the Georgia Environmental Protection Division General National Pollutant Discharge Elimination System Permit No. GAR10003 in Violation of CWA 33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f); and (4) Attorneys' Fees, Costs, and Expenses under CWA 33. U.S.C. § 1365(d). (Id. at 26-29.) VCL is the only remaining Defendant pursuant to a stipulation by the Parties. (Doc. 127.)

Pursuant to the Court's March 26, 2024 Order, Plaintiffs' CWA claims for alleged pollutants caused by any work east of The Park at Village Creek (the "Park") were dismissed because Plaintiffs failed to identify the point source that VCL would have been able to use to correct the alleged violations. (Doc. 66, at 10-14.) VCL now moves for summary judgment on Plaintiffs' remaining claims, arguing it did not perform any work on the property at issue and did not have any responsibility for or control over the performance of the Work. (Doc. 83-1, at 6-10.) Thus, VCL argues it has no liability for any of the remaining CWA claims. (Id. at 10.) Plaintiffs oppose the motion, arguing there are questions of material fact as to what is considered "land east of the Park," ownership of the properties when the wetland destruction occurred, and the actual location of the Park. (Doc.

2

87, at 4.)  The Court addresses the Parties' arguments below, but starts by summarizing the relevant facts.

Preliminarily, Plaintiffs filed two unopposed motions to amend and correct their response to VCL's statement of undisputed material facts ("SUMF") and their own SUMF because of scriveners' errors and an inadvertent omission of exhibits.  (Docs. 93, 94.) VCL opposed neither motion.  Thus, Plaintiffs' motions to amend and correct are **GRANTED** and the Court considers the amended filings (Docs. 93-1, 94-1) in lieu of and in support of the original filings (Docs. 86-8, 88).

Plaintiffs allege Defendants, including VCL, "engaged in land-clearing, grading, filling, and construction activities (the "Work")" at the Park.  (Doc. 38, at 1.)  VCL provides a sworn declaration from Dr. James Gowen, an authorized member of VCL, stating VCL owns property east of the Park, specifically Parcel ID 04-15704 and Parcel ID 04-15158 (collectively, the "Parcels"). (Doc. 82, at 1-2.)  VCL hired Golden Isles Underbrushing & Mulching, LLC ("GIUM") to do some underbrushing and clearing work on the Parcels on or around September 25, 2022 because the area was filled with trash, overgrowth, and feral cats.  (Id. at 2.) However, Dr. Gowen represents that VCL did not do any Work inside the Park or north of it, nor did it have any responsibility or control over the performance of such Work.  (Id. at 2-3.)

VCL also purchased a single lot within the Park around September 1, 2022 (Parcel ID 04-15678) (the "Park Lot"). (Id. at 3.) But VCL did not perform any Work on the Park Lot and did not have responsibility or control over any Work that would have occurred before its purchase of the Park Lot. (Id.)

Plaintiffs dispute whether VCL had any involvement with the Work performed in the Park. (Doc. 88, at 3.) Plaintiffs also dispute what property is considered to be within the Park. (Id. at 4.) However, Plaintiffs concede that there is no evidence VCL was involved with Work in the area north of the Park, thus the Court finds any claims related to property north of the Park have been abandoned by Plaintiffs. (Id.)

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v.

Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation omitted) (internal quotation marks omitted).

The moving party has the initial burden of showing the court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case, or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If, and only if, the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of

5

proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. Fitzpatrick, 2 F.3d at 1116. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. If the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided Plaintiffs notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 84.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is ripe for consideration.

## III. DISCUSSION

VCL moves for summary judgment on all remaining claims because it did not perform any Work on the property at issue, nor have any control over the performance of such Work. (Doc. 83-1, at 6-10.) Plaintiffs argue VCL owned the Park Lot when the improper clearing and destruction took place, so there is a genuine issue of material fact as to the overall involvement of VCL at the time of the Work. (Doc. 87, at 6.)

"To establish a CWA violation, Plaintiffs must prove five (5) elements: that (1) there has been a discharge; (2) of a pollutant; (3) into waters of the United States; (4) from a point source; (5) without a permit." Lambeth v. Three Lakes Corp., 478 F. Supp. 3d 1347, 1354 (N.D. Ga. 2020) (citing Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1008 (11th Cir. 2004)). "The CWA imposes liability on both the party who actually performed the work causing the discharge and on the party with responsibility for or control over the work." Id. at 1355 (citations omitted and alteration adopted). Thus, VCL can only be held liable "if it actually discharged the pollutants into the waters or if it had responsibility for, or control over, the performance of work which created the discharge of pollutants." Id. (citation and quotation marks omitted).

VCL argues it cannot be liable under the CWA simply for its ownership of property within the Park, and Plaintiffs have to put

7

forth evidence that it performed, directed, or controlled work in the Park, which they have not done. (Doc. 83-1, at 9-10.) While Plaintiffs argue VCL was the owner of the Park Lot when the Work took place, which VCL does not dispute, they do not point to any evidence that VCL was involved with any Work on the Park Lot. (Doc. 87, at 6.) Instead, they simply argue that VCL owning the Park Lot "implies that VCL had certain obligations including the right and duty to control vegetation removal and other work conducted on its property." (Id. at 12.) To avoid summary judgment, Plaintiffs must either show evidence that was "overlooked or ignored" by VCL or "come forward with additional evidence" to prove liability. Fitzpatrick, 2 F.3d at 1116-17 (citation omitted). Plaintiffs cannot rely on the pleadings or the Complaint, which they try to do here. See Morris, 663 F.2d at 1033-34. To "dispute" these facts, Plaintiffs rely on VCL's SUMF, their Complaint, and a response to the motion to dismiss filed by the dismissed Defendants. (Doc. 93 -1, at 3 (citing Doc. 83-1, at 5; Doc. 83-2, ¶¶ 6-7; Doc. 38, ¶ 79; Doc. 38-7, at 10; Doc. 42, at 9).) The Court finds Plaintiffs point to no evidence for the Court to find a genuine dispute of material fact exists as to whether VCL completed or was involved with the Work in the Park.

Thus, preliminarily, the Court finds there is no dispute of material fact as to VCL's involvement in the CWA violations

because Plaintiffs point to no evidence VCL performed the Work causing the discharge or was responsible for or had control over the Work.  Lambeth, 478 F. Supp. 3d at 1355.  The only evidence of VCL performing underbrushing and clearing deals with VCL's properties east of the Park.  (Doc. 82, at 2.)

Nevertheless, Plaintiffs argue VCL's motion fails because there is a genuine dispute of material fact as to which parcels of land are within the Park and which parcels are east of the Park for purposes of interpreting the Court's March 26, 2024 Order.[1] (Doc. 87, at 7-11.)  Plaintiffs take particular issue with Parcel ID 04-15704 (hereinafter, the "Disputed Parcel"), which VCL admits to owning.  (Id. at 7.)  In response, VCL argues the Park is a 6.7-acre residential subdivision and does not include the Disputed Parcel — a 1.17-acre strip of land east of the Park.  (Doc. 97, at 5.)  VCL argues that Plaintiffs' position lacks merit by relying on the Notice Letter[2]; surveys; a declaration from Gary Nevill, the land surveyor who prepared the survey; property records; the final plat of the subdivision; an application to Glynn County seeking approval of the final plat; a civil engineering report on the wetland impact; and several other documents to support that

---

[1] The Court dismissed Plaintiffs' claims against VCL for alleged pollutants cause by any work east of the Park because Plaintiffs failed to provide proper notice of an identifiable point source.  (Doc. 66, at 6-14.)

[2] The Court uses this term as defined in the Court's March 26, 2024 Order. (Doc. 66, at 4 ("Plaintiffs sent Defendants a letter on December 22, 2022 (the "Notice Letter") notifying them of their violations under the CWA and of Plaintiffs' intent to file suit for such violations after sixty (60) days, as required by 40 C.F.R. § 135.2(a)(1).").)

the Disputed Parcel is outside the Park. (Id. at 6-11.) Plaintiffs did not file a sur-reply to VCL's response.

The Court finds VCL provides sufficient evidence that the Disputed Parcel is not part of the Park — the basis of Plaintiffs' CWA claims. (Doc. 38, at 1; Doc. 66, at 14.) Instead, the Disputed Parcel is east of the Park, and the claims for alleged pollutants caused by work east of the Park have already been dismissed by the Court's March 26, 2024 Order. (Doc. 66, at 6-14.) In looking at the final plat for the Park, which was approved by the Glynn County Planning Commission on August 15, 2022 and contains a certificate of accuracy signed by Gary Nevill and a certificate of approval by the Glynn County Board of Commissioners, the Disputed Parcel is not part of the Park. (Doc. 95-2, at 1.) Further, Nevill, the land surveyor who prepared the survey and final plat for the Park, explicitly declared that the Park/subdivision does not include the Parcels - and most relevant here, the Disputed Parcel. (Doc. 95, at 2.) Thus, VCL provided affirmative evidence that the Disputed Parcel, upon which it completed some work, is not part of the Park, and thus not subject to liability under the CWA for the claims Plaintiffs bring here.

Plaintiffs point the Court to the Georgia Department of Natural Resources' ("DNR") field notification to stop work (the "Stop Work Order") which contained photos to illustrate the location of violations, arguing the Disputed Parcel appears to be

10

within the Park. (Doc. 87, at 7.) However, the DNR's Stop Work Order cannot expand the pled claims which Plaintiffs limited in scope by their issuance of the Notice Letter. (See Doc. 66, at 7-10.) As the Court already explained, the Notice Letter is required to "provide enough information to permit the recipient to identify the allegedly violated standards, dates of violation, and relevant activities, with sufficient specificity." (Id. at 9 (quoting Johnson v. 3M, 563 F. Supp. 3d 1253, 1282 (N.D. Ga. 2021)).) The Court found the Notice Letter originally referenced actions *in* the Park subdivision, but the allegations throughout it broadened the locations limitation. (Id. at 10.) Nevertheless, the Court found the Notice Letter still had to "identify a point source of discharge for any alleged pollutant," and Plaintiffs failed to identify a point source so VCL could have corrected alleged CWA violations. (Id. at 10-13 (citations omitted).) This finding was made pertaining to any work east of the Park. (Id. at 14.) Thus, Plaintiffs cannot now expand their claims to include VCL's property east of the Park when, as the Court already found, their Notice Letter did not provide VCL proper notice of an identifiable point source. (See id.)

Furthermore, based on the evidence VCL points the Court to, including the declaration of Neville, there is no question the Disputed Parcel is outside the Park as declared by the survey, subdivision approval in Glynn County, and many other sources.

11

Thus, Plaintiffs' attempt to argue a material fact exists as to the boundary of the Park fails. As the Court already found, and Plaintiffs arguments do not change, Plaintiffs' claims for work east of the Park have been dismissed, and any attempt to revive them by trying to create a dispute over the Park's boundaries fail.

For these reasons, the Court finds there is insufficient evidence that VCL performed any Work in the Park, or the area north of it, nor had any responsibility for or control over the performance of such Work. Furthermore, there is no evidence the Parcels, especially the Disputed Parcel, are part of the Park, so any Work completed on the Parcels cannot form the basis of this suit. Because CWA liability can be imposed only on a party performing the work or on a party with responsibility or control over the work, and VCL is neither, Plaintiffs' claims against it fail. See Lambeth, 478 F. Supp. 3d at 1355 (citation omitted).

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs' consent motions to amend/correct their responses (Docs. 93, 94) are **GRANTED** and VCL's motion for summary judgment (Doc. 83) is **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** for Defendant Village Creek Landing, LLC, **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

12

**ORDER ENTERED** at Augusta, Georgia, this _2th_ day of _February_, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA